# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Guzman v. 7513 West Madison Street, Inc., 2013 IL App (1st) 122161**

---

| | |
|---|---|
| Appellate Court Caption | MARCELINO GUZMAN, BERTHA GUZMAN and BEVERLY MYERS, Plaintiffs-Appellants, v. 7513 WEST MADISON STREET, INC., d/b/a Duffy's Tavern, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-2161 |
| Filed | March 29, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action under the Dramshop Act where the shop's insurer is insolvent and the Illinois Insurance Guaranty Fund is defending, and plaintiffs have recovered from their underinsured motorist insurer, the intoxicated person's automobile liability insurer or their group health insurer, and the jury's verdict exceeds defendant's maximum liability under the Act, the reduction for "other insurance" recoveries arising from section 546(a) of the Illinois Insurance Code should be made from defendant's maximum dramshop liability to each plaintiff, not from the jury's damage award. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-15784; the Hon. Moira S. Johnson, Judge, presiding. |
| Judgment | Certified question answered; cause remanded. |

Counsel on
Appeal

Kevin B. Apter, of Lipkin & Higgins, of Chicago, for appellants.

Mary Beth O'Brien, of Lindsay, Rappaport & Postel, LLC, and Hugh C. Griffin, of Hall Prangle & Schoonveld, LLC, both of Chicago, for appellee.

Panel

JUSTICE HOWSE delivered the judgment of the court, with opinion.

Presiding Justice McBride and Justice Palmer concurred in the judgment and opinion.

## OPINION

¶ 1      In this case we consider a question certified by the trial court concerning the obligation of the Illinois Insurance Guaranty Fund when the Fund assumes the defense of a dramshop case because the defendants' insurer is declared insolvent. We granted leave to appeal in this permissive interlocutory appeal pursuant to Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Feb. 26, 2010)).

¶ 2      The following question was certified by the circuit court:

"In a case under the Dram Shop Act where the defendant dram shop is being defended by the Illinois Insurance Guaranty Fund after defendant's dram shop liability insurer was declared insolvent and the plaintiffs have already made insurance recoveries from their underinsured motorist insurer and/or from the alleged intoxicated person's auto liability insurer and/or from their group health insurer, and the jury returns a verdict in excess of the Defendant's maximum liability under the Dram Shop Act, is the reduction for 'other insurance' recoveries set forth in Section 546(a) of the Illinois Insurance Guaranty Fund Act applied against the Defendant's maximum dram shop liability of $58,652.333 to each Plaintiff?"

¶ 3      For the reasons that follow we answer the question in the affirmative.

¶ 4                       BACKGROUND

¶ 5      On June 18, 2009 plaintiff Marcelino Guzman was operating a motor vehicle with a passenger, his wife, Bertha Guzman. They were struck by a vehicle driven by Nikki Klassert. A third plaintiff, Beverly Myers, was a pedestrian who was injured as a result of the collision of the two automobiles. Plaintiffs alleged that at the time of the accident Klassert negligently operated her vehicle, that Klassert was intoxicated and that she had been served alcoholic liquors by Duffy's Tavern, the defendant.

¶ 6      On July 20, 2009, the Guzman plaintiffs filed a negligence action against Ms. Klassert in the circuit court of Cook County seeking to recover for the injuries they allegedly

sustained in the collision. This case was subsequently settled by the payment of $40,000, the policy limits of Klassert's automobile liability insurer, Safeway Insurance Co. The settlement payment was divided among the Guzmans and Beverly Myers. Marcelino Guzman received $13,333.34. Bertha Guzman and Myers each received the sum of $13,333.33 from the settlement.

¶ 7 Plaintiffs recovered insurance proceeds from other solvent insurers as a result of the injuries they suffered. Plaintiffs Marcelino Guzman and Bertha Guzman each received $36,666.66 from their own underinsured motorist coverage in addition to the Klassert settlement. Plaintiff Myers received $236,666.67 from her own automobile liability insurer and $87,529.78 from her group health insurer.

¶ 8 On May 5, 2010, plaintiffs filed the instant action against defendant under the Dramshop Act (Act) (235 ILCS 5/6-21 (West 2008)), seeking damages for their injuries. The Dramshop Act provides limited no-fault liability where a plaintiff can demonstrate that a patron was intoxicated as a result of liquor provided by a bar and the plaintiff suffered resulting injuries because of the patron's intoxication. The Dramshop Act provides: "in no event shall the judgment or recovery for injury to the person or property of any person exceed" the maximum recovery allowed under the Act. 235 ILCS 5/6-21 (West 2008). The maximum amount recoverable in a dramshop case may increase or decrease annually depending on a formula provided in the Act which is based on the consumer price index. The parties agree the maximum amount of damages recoverable by the plaintiffs for their injuries in this case under the Dramshop Act is $58,652.33 per plaintiff.

¶ 9 At the time of the accident, defendant was insured under a liquor liability policy issued by Constitutional Casualty Company, which had a $1 million policy limit. On January 21, 2011, Constitutional Casualty Company was declared insolvent and placed into liquidation by the Illinois Department of Insurance. The Illinois Insurance Guaranty Fund (the Fund) has assumed responsibility for the obligations of Constitutional Casualty Company to Illinois claimants and policyholders, subject to the limitations and conditions of the Illinois Insurance Code (hereinafter Guaranty Fund Act) (215 ILCS 5/532 *et seq.* (West 2008)). Accordingly, attorneys engaged by the Fund assumed the defense of this case on behalf of the defendant.

¶ 10 The attorneys retained by the Fund filed an affirmative defense. As an affirmative defense, defendant alleged that the Dramshop Act set the maximum recovery of each plaintiff in this case at $58,652.33, and, therefore, $58,652.33 is the extent of the obligation of the Fund. Defendant argues that under section 546(a) of the Guaranty Fund Act, the obligation of the Fund and the defendant's liability to each of the plaintiffs is required to be reduced in an amount equal to each plaintiff's recovery from other insurance companies. Therefore, because Marcelino and Bertha Guzman had each received $50,000 from other insurance, the Fund's obligation and defendant's liability to them is reduced in the same amount and the maximum recovery for each of the Guzman plaintiffs would be $8,652.33. Defendant argued Beverly Myers would not be entitled to any recovery because her recovery from other insurance exceeded the $58,652.33 obligation of the Fund under section 546(a).

¶ 11 Section 546(a) provides:

"An insured or claimant shall be required first to exhaust all coverage provided by any

-3-

other insurance policy, regardless of whether or not such other insurance policy was written by a member company, if the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund. The Fund's obligation under Section 537.2 shall be reduced by the amount recovered or recoverable, whichever is greater, under such other insurance policy.*** To the extent that the Fund's obligation under Section 537.2 is reduced by application of this Section, the liability of the person insured by the insolvent insurer's policy for the claim shall be reduced in the same amount." 215 ILCS 5/546(a) (West 2008).

¶ 12    Plaintiffs filed a motion to strike defendant's affirmative defense. The plaintiffs did not contest that the funds received from Klassert's liability insurer, their own underinsured policy and the amounts from group health insurance are subject to the reductions required in section 546(a). However, the plaintiffs contest the manner in which the reduction should be applied.

¶ 13    The Dramshop Act allows a plaintiff to present a damage claim to a jury for a damage award with no instruction about the damage cap of the Dramshop Act:

"In every such action the jury shall determine the amount of damages to be recovered without regard to and with no special instructions as to the dollar limits on recovery imposed by this Section." 235 ILCS 5/6-21 (West 2008).

¶ 14    Plaintiffs argue that a jury should be allowed to determine the full amount of their damages and the reduction for other insurance required by section 546(a) should be made from the jury's damage award. Plaintiffs argue the statute should be interpreted such that if the jury's damage award, after the reductions required by section 546(a) are made, exceeds the dramshop damage limits, the trial court could reduce the award and enter judgment for the maximum damages allowed by the Dramshop Act.

¶ 15    On April 30, 2012, the trial court judge denied the plaintiffs' motion to strike the affirmative defense. On July 16, 2012, the trial court certified the question presented for review. We granted leave to appeal.

¶ 16                                ANALYSIS

¶ 17    In this case, we consider a certified question concerning how the "other insurance" reduction required by section 546(a) of the Guaranty Fund Act impacts a dramshop claim made against a defendant where the defense has been assumed by the Illinois Insurance Guaranty Fund due to the insolvency of the insurer. This case involves a certified question concerning the interpretation of a statute. Therefore, we are presented with a question of law and our standard of review is *de novo*. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 57-58 (2007); *Advincula v. United Blood Services*, 176 Ill. 2d 1, 12 (1996).

¶ 18    "The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent." *Moore v. Green*, 219 Ill. 2d 470, 479 (2006). Like any other exercise in statutory construction, the court's analysis begins with the specific language contained in the statute because the words used provide the best indication of legislative intent. *Hernandez v. Kirksey*, 306 Ill. App. 3d 912, 914 (1999). "Where an enactment is clear and unambiguous, we are not at liberty to depart from the plain language and meaning of the statute by reading

into it exceptions, limitations or conditions that the legislature did not express." *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 510 (2006).

¶ 19    The Fund is a nonprofit entity created to protect the policyholders of insolvent insurers and third parties who make claims under policies issued by insurers that become insolvent. *Hasemann v. White*, 177 Ill. 2d 414, 416 (1997). The Fund's liability is subject to the limitation that the subject claim must be a covered claim. 215 ILCS 5/534.3 (West 2008); *Roth v. Illinois Insurance Guaranty Fund*, 366 Ill. App. 3d 787 (2006).

¶ 20    A claimant possessing a covered claim is required to exhaust his rights under any other policy of insurance which involves the same facts, injury or loss that gave rise to the covered claim. 215 ILCS 5/546(a) (West 2008). The obligation of the Fund is reduced by the amounts a claimant receives from other insurance. *Roth*, 366 Ill. App. 3d 787. Therefore, for payments a plaintiff receives from his medical insurer or his own automobile insurer for the same facts, injury or loss, a deduction must be made from the Fund's liability to the plaintiff. *Id*. This court has repeatedly stated that the Fund is a fund of last resort. *Illinois Insurance Guaranty Fund v. Farmland Mutual Insurance Co.*, 274 Ill. App. 3d 671, 674 (1995); *Harrell v. Reliable Insurance Co.*, 258 Ill. App. 3d 728, 731 (1994).

¶ 21    To consider the question presented to us, we first look to the statute. When the defense of a claim has been assumed by the Illinois Insurance Guaranty Fund, section 546(a) requires a reduction of the Fund's obligation by the sum a plaintiff receives from another insurer.

¶ 22    Section 546(a) provides, in relevant part:

"The Fund's obligation under Section 537.2 shall be reduced by the amount recovered or recoverable, whichever is greater, under such other insurance policy." 215 ILCS 5/546(a) (West 2008).

¶ 23    Section 537.2 defines the obligation of the Fund and provides that the Fund is obligated to the extent of the covered claims:

"The Fund shall be obligated to the extent of the covered claims existing prior to the entry of an Order of Liquidation against an insolvent company and arising within 30 days after the entry of such Order ***." 215 ILCS 5/537.2 (West 2008).

¶ 24    The definition of a covered claim is also found in the statute:

"Covered claim; unearned premium defined.

(a) 'Covered claim' means an unpaid claim for a loss arising out of and within the coverage of an insurance policy to which this Article applies and which is in force at the time of the occurrence giving rise to the unpaid claim *** made by a person insured under such policy or by a person suffering injury or damage for which a person insured under such policy is legally liable ***." 215 ILCS 5/534.3 (West 2008).

¶ 25    Thus, a "covered claim" is an unpaid claim made by a person suffering injury or damage under a policy issued by a company that has been declared insolvent for which a person insured under such policy is *legally liable*.

¶ 26    The Dramshop Act provides: "[I]n no event shall the judgment or recovery for injury to the person or property of any person exceed" the maximum recovery allowed under the Dramshop Act. 235 ILCS 5/6-21 (West 2008). The parties agree that the maximum recovery

allowed under the Dramshop Act in this case is $58,652.33 per person. Therefore, the defendant is legally liable to the plaintiffs up to the maximum recovery possible under the Dramshop Act, $58,652.33 per plaintiff. *Id*. When we read the relevant provisions of the Guaranty Fund Act together with the Dramshop Act, we conclude the extent of the covered claims determines the obligation of the Fund. Since defendant's legal liability is limited to $58,652.33 per person, the extent of the covered claims is $58,652.33 per person. Therefore, the Fund is obligated to the extent of the covered claims or $58,652.33 per person. 215 ILCS 5/537.2 (West 2008).

¶ 27    Accordingly, under section 546(a), the obligation of the Fund ($58,652.33 per person) is required to be reduced by the recoveries received by plaintiffs from other insurance policies and the certified question is answered in the affirmative.

¶ 28    Plaintiffs argue that the reductions for other insurance required by section 546(a) should be made from the jury damage award, citing *Kurth v. Amee, Inc.*, 3 Ill. App. 3d 506 (1972). In that case Watson, plaintiff, filed a complaint which alleged she was injured in an accident caused by Robert Menge. The complaint alleged Menge was intoxicated at the time of the accident and the dramshop defendants had sold or furnished the alcohol that caused his intoxication. Menge was dismissed after plaintiff signed a covenant not to sue Menge in consideration of $24,000 received from him. The dramshop defendants subsequently filed a motion to dismiss. The trial court granted the motion to dismiss on the basis that plaintiff is entitled to only one recovery and that she had already received $24,000 for her negligence claim, more than the maximum amount recoverable under the Dramshop Act. *Kurth*, 3 Ill. App. 3d at 508.

¶ 29    On appeal the court acknowledged that plaintiffs may receive but one satisfaction for one injury. If several remedies and actions exist, setoffs should be allowed to prevent a double recovery. *Id.* at 510. However, the court stated this principle should not be administered in a manner that prevents plaintiff's total recovery. In reversing the dismissal order, the appellate court considered the proper procedure to follow in a dramshop case to prevent a double recovery without prejudicing a plaintiff's right to a complete recovery. In such cases, the appellate court ordered that the total damages should be assessed without reference to any amounts already received and the verdict reduced by such amount. *Id.* The difference would be subject to the maximum limits provided in the Dramshop Act.

¶ 30    *Kurth* does not support the plaintiffs' position in this case. The *Kurth* court determined the proper procedure to allow setoffs to prevent a double recovery in dramshop cases. *Kurth* did not interpret how the reductions required by section 546(a) are made in cases where dramshop defendants are represented by the Illinois Insurance Guaranty Fund. The legislature in section 546(a) clearly and unambiguously requires that the obligation of the Fund be reduced by the amount recovered from other insurance.

¶ 31    Other courts have interpreted section 546(a) as we have. In *Tralmer v. Soztneps, Inc.*, 283 Ill. App. 3d 677 (1996), the plaintiff was injured when the car she was driving collided with an automobile driven by Pamela Loeb. Plaintiff Tralmer sued Loeb alleging that the collision was due to Loeb's negligence and that Loeb was intoxicated at the time of the collision. *Tralmer*, 283 Ill. 3d at 679.

¶ 32    Tralmer also filed a dramshop case against defendants Hob Knob and Vertigo, alleging that they were liable under the Dramshop Act for serving liquor to Loeb. The defendants' dramshop insurer was declared insolvent and the Illinois Insurance Guaranty Fund became obligated to defendants Hob Knob and Vertigo. *Id.* In 1992, the limit of recovery under the Dramshop Act for injuries was $30,000.

¶ 33    Tralmer then settled her case against Loeb for $100,000, the liability limit under Loeb's automobile insurance policy. Hob Knob and Vertigo subsequently filed motions for summary judgment on the grounds that under section 546(a), the maximum $30,000 that Tralmer could recover should be reduced by the $100,000 she had received from Loeb under her insurance policy. In 1992, section 546(a) provided:

> "Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim. Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy." 215 ILCS 5/546(a) (West 1992).

¶ 34    The trial court concluded that because plaintiff had recovered $100,000 from Loeb's insurance policy, and the dramshop maximum recovery was $30,000, Tralmer could never obtain additional recovery from the defendants. Therefore, the court entered summary judgment for the defendants. *Tralmer*, 283 Ill. 3d at 679.

¶ 35    The appellate court observed that Tralmer's negligence claim against Loeb was based on common law tort. The dramshop case Tralmer filed against Hob Knob and Vertigo was a statutory cause of action. Therefore, the two cases did not constitute the "same claim" within the meaning of section 546(a). Accordingly, the appellate court reversed the trial court because the provisions of section 546(a) did not require the $30,000 dramshop maximum recovery to be reduced by Tralmer's $100,000 settlement because it was not from the same claim. *Id.* at 681-82.

¶ 36    In 1997, one year after the appellate court in *Tralmer* determined that a negligence claim is not the same as a dramshop claim for purposes of section 546(a), the legislature amended section 546(a) and changed the wording of the statute, expanding its deduction requirements from instances of the "same claim" to instances where a claim arises from the "same facts, injury or loss." The statute now provides:

> "An insured or claimant shall be required first to exhaust all coverage provided by any other insurance policy, regardless of whether or not such other insurance policy was written by a member company, *if the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund*. The Fund's obligation under Section 537.2 shall be reduced by the amount recovered or recoverable, whichever is greater, under such other insurance policy." (Emphasis added) 215 ILCS 5/546 (West 2010).

¶ 37    We presume the legislature was aware of *Kurth* when it amended section 546(a):

> "Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law." *People v. Hickman*, 163 Ill. 2d 250, 262 (1994).

¶ 38    In this case, the 1997 amendment to section 546(a) was enacted after *Tralmer* was filed in 1996. Accordingly, we must presume that the legislature knew that the *Tralmer* court interpreted section 546(a) to require the reduction for other insurance coverage be applied to reduce the maximum dramshop liability and not a jury damage award. We observe that the legislature did not change the *Tralmer* court's interpretation that the "other insurance" reduction required by section 546(a) applied to reduce the Fund's maximum obligation in dramshop cases. The 1997 amendment clarifies that the reduction required by section 546(a) applied "*if the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund*," regardless of the theory of recovery–whether negligence or dramshop.

¶ 39    Therefore, we presume in 1997, when the legislature amended the Act, it was aware that Illinois courts interpreted section 546(a) to required the "other insurance" deduction apply to reduce the maximum dramshop awards. The legislature expanded the applicability of the claim requirement without changing the *Tralmer* court's method of applying section 546(a) to dramshop damage limits, implicitly approving the manner in which the court applied section 546(a).

¶ 40    Plaintiffs also argue that the $1 million policy limit is the Fund's obligation and the deduction required in section 546(a) be made from the policy limits. However, the Guaranty Fund Act in section 537.2 clearly and unambiguously states that the Fund's obligation is the amount of the covered claims. In this case, the extent of the covered claims is $58,652.33.

¶ 41    Moreover, the statute makes it clear that the Fund's obligation and the policy limits are not synonymous terms and the obligation of the Fund could be less than the policy limits:

    "Any obligation of the Fund to defend an insured shall cease upon the Fund's payment or tender of an amount equal to the lesser of the Fund's covered claim obligation limit or the applicable policy limit." 215 ILCS 5/537.2 (West 2008).

¶ 42    Plaintiff also argues that the Guaranty Fund Act has a $300,000 per-claimant limitation and the Guaranty Fund Act limitation should apply rather than the limitation found in the Dramshop Act. The Guaranty Fund Act provides a limit on damages regardless of the theory of recovery. In contrast, the damage limitation provided in the Dramshop Act is a specific limitation of the statute under which plaintiff is seeking recovery. "[W]here there are two statutory provisions, one of which is general and designed to apply to cases generally and the other is particular and relates to only one subject, the particular provision must prevail." (Internal quotation marks omitted.) *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195 (1992). In this case, the damage limitation of the Dramshop Act is specific to the statutory dramshop claim filed by the plaintiff and applies here instead of the general damage limitation of the Guaranty Fund Act.

¶ 43    Finally, the parties have also cited a Fifth District opinion, *Rogers v. Imeri*, 2013 IL App (5th) 110546. In *Rogers*, the Fifth District considered the same issue in the certified question before us–how should the deduction for other insurance recoveries be made where the Fund provides a defense for a dramshop defendant. In its decision, the Fifth District determined that the deduction for other insurance recoveries should be made from the jury damage award, which is a different outcome from our decision.

¶ 44      We agree with the Fifth District's finding in *Rogers* that the obligation of the Fund must be reduced by recoveries from other insurance policies. However, we reach a different result because the Guaranty Fund Act has clearly and unambiguously defined the obligation of the Fund as the extent of covered claims. In this case, the extent of covered claims is $58,652.33 per claimant. Therefore, the reduction required for recoveries from other insurance in section 546(a) is required to be made from the $58,652.33 covered claim obligation in this case.

¶ 45                          CONCLUSION

¶ 46      We answer the trial court's question in the affirmative and remand.

¶ 47      Certified question answered; cause remanded.