# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Rogers v. Imeri*, 2013 IL 115860

---

| | |
|---|---|
| Caption in Supreme Court: | ROY DEAN ROGERS II *et al.*, Appellees, v. GANI IMERI, Indiv. and d/b/a Johnny's Bar and Grill, Appellant. |
| Docket No. | 115860 |
| Filed | November 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Dramshop Act both allows jury trial and sets the maximum for a bar owner's liability; and, when the Insurance Guaranty Fund assumed such an owner's defense, its governing statute did not allow it to pay more than that and provided that dramshop plaintiffs' other insurance recoveries be set off against that cap prior to jury trial. |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Effingham County, the Hon. Kimberly G. Koester and the Hon. Michael P. Kiley, Judges, presiding. |
| Judgment | Appellate court judgment reversed.<br>Cause remanded. |

Counsel on
Appeal

Hugh C. Griffin, of Hall, Prangle & Schoonveld, LLC, of Chicago, and Jon R. Shelton, of Shelton & Madrid, LLC, of St. Louis, Missouri, for appellant.

Christopher A. Koester, of Taylor Law Offices, P.C., of Effingham, for appellees.

Cochran, Cherry, Givens, Smith & Montgomery, L.L.C., of Chicago (John K. Kennedy, of counsel), for *amicus curiae* Illinois Trial Lawyers Association.

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

¶ 1    The sole issue in this appeal is whether, in a Dramshop Act case where a bar owner is defended by the Illinois Insurance Guaranty Fund (the Fund), the reduction for "other insurance" recoveries under section 546(a) of the Illinois Insurance Code (hereinafter, the Guaranty Fund statute) (215 ILCS 5/546(a) (West 2012)) applies against the jury's verdict or against the bar owner's maximum statutory liability. The trial court decided that the issue was premature because the plaintiffs, Roy and Theresa Rogers, had not obtained a verdict against the defendant, Gani Imeri. But the trial court certified a question to the appellate court pursuant to Supreme Court Rule 308(a). Ill. S. Ct. R. 308(a) (eff. Feb. 26, 2010). The appellate court held that the reduction should be applied against the jury's verdict. 2013 IL App (5th) 110546.

¶ 2    For the reasons that follow, we reverse and remand for further proceedings.

¶ 3                              BACKGROUND

¶ 4    In 2009, a vehicle driven by 18-year-old Roy Dean Rogers III and a vehicle driven by 60-year-old John Winterrowd were involved in a head-on collision on a rural highway in Effingham County. Winterrowd was intoxicated, and Rogers was not. Rogers died in the accident. His parents received $26,550 from Winterrowd's automobile liability insurer and $80,000 from their own automobile liability insurer—a total of $106,550. They subsequently filed a six-count complaint under the Dramshop Act against Imeri, the owner of the bar

-2-

where Winterrowd was drinking, seeking recovery for their son's personal injury and their loss of society.

¶ 5 At the time the accident occurred, Imeri maintained a dramshop liability policy with Constitutional Casualty Company. The policy provided a policy limit of $130,338.51, the statutory cap under the Dramshop Act. See generally 235 ILCS 5/6-21(a) (West 2012). While this case was pending, Imeri's insurer was declared insolvent and liquidated, and the Fund assumed his defense.

¶ 6 Imeri filed a "motion for summary adjudication of the amount that liability must be reduced" under section 546(a). In that motion, Imeri sought a ruling that his maximum liability was $23,788.51, which represented the difference between the statutory cap on dramshop liability and the other insurance proceeds. The Rogerses responded that the setoff for other insurance proceeds should come after the jury's verdict. The trial court denied Imeri's motion as premature, commenting that such a ruling would "invade the jury's role as finder of fact." The court noted that, if the jury should find in favor of the Rogerses, Imeri would have an opportunity to request setoffs.

¶ 7 Imeri filed a motion to reconsider that ruling or, in the alternative, to certify a question under Rule 308(a). The Rogerses agreed to the request for certification. The trial court granted the motion and certified the following question for review:

"Where the defendant in a dram shop case is being defended by the Illinois Insurance Guaranty Fund after defendant's liability insurer was declared insolvent, and where plaintiff has already made an insurance recovery from plaintiff's underinsured motorist insurer and from the alleged intoxicated person's liability insurer, and where the jury returns a verdict in excess of the defendant's maximum liability under the Dram Shop Act, is the reduction for 'other insurance' recoveries set forth in Section 546(a) of the Illinois Insurance Guaranty Fund Act applied against the jury's verdict or against the defendant's maximum dram shop liability?"

¶ 8 The appellate court held that the section 546(a) reduction should be applied against the jury's verdict. 2013 IL App (5th) 110546, ¶ 23. The court noted that while the Fund acts as a substitute for an insolvent insurer, it is not a separate source of recovery. *Id.* ¶ 13. Thus, "unless specific limitations in the Guaranty Fund statute are applicable, the Guaranty Fund's obligation is determined by the Dramshop Act." *Id.* The appellate court, however, did not look to the Dramshop Act to determine the extent of that obligation, but rather to emphasize the provision of a jury trial on damages without regard to the statutory limit. *Id.* ¶ 14. The court then discussed *Kurth v. Amee, Inc.*, 3 Ill. App. 3d 506 (1972), a dramshop case that did not involve the Fund, which outlined a three-step procedure for setoffs in such cases: "First, the jury determines the total damages sustained. The jury's award is then offset by other recoveries. Finally, if the remainder is above the statutory limit, it is reduced to that limit." 2013 IL App (5th) 110546, ¶ 15. The court disagreed that a different procedure should apply simply because the Fund was involved, and distinguished *Roth v. Illinois Insurance Guaranty Fund*, 366 Ill. App. 3d 787 (2006), because it was not a Dramshop Act case. 2013 IL App (5th) 110546, ¶ 20. In closing the court noted:

"[W]hether the Guaranty Fund is obligated to pay the statutory maximum in a

-3-

dramshop case depends on the facts of the case. If the jury returns a verdict of $500,000 in the instant case, that amount would be reduced to $393,450, which would then be reduced to the statutory dramshop maximum of $130,338.51. However, if the jury returns a verdict of $200,000, that would be reduced to $93,450, which is less than the statutory maximum. We believe that these limits are sufficient to effectuate the purpose of section 546." *Id.* ¶ 22.

¶ 9     This court allowed Imeri's petition for leave to appeal. See Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010). We allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of the plaintiffs. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 10                                          ANALYSIS

¶ 11     Supreme Court Rule 308(a) provides for interlocutory appeals of nonfinal orders that present "a question of law as to which there is substantial ground for difference of opinion." Ill. S. Ct. R. 308(a). When the trial court concludes that an answer to such a question "may materially advance the ultimate termination of the litigation," the court must identify the question in writing, and the appellate court may allow an appeal. *Id.* Because an interlocutory appeal under Rule 308(a) necessarily involves a question of law, our standard of review is *de novo. In re Marriage of Mathis*, 2012 IL 113496, ¶ 19 (citing *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 58 (2007)).

¶ 12     As the appellate court noted, the parties agree Imeri is entitled to a setoff of the $106,550 that the Rogerses received from the two automobile insurance policies. Their disagreement centers on how that setoff operates, or, more precisely, the amount against which it applies. The Fund argues that the setoff should be deducted from the statutory cap of $130,338.51, based on the plain language of the Guaranty Fund provisions. The Rogerses argue that the setoff should be deducted from the jury's eventual verdict, which may then be reduced to the statutory cap, if necessary. These opposing positions correspond to those taken by the Fifth District here and the First District in *Guzman v. 7513 West Madison Street, Inc.*, 2013 IL App (1st) 122161.

¶ 13     The cardinal rule of statutory construction is to ascertain and effectuate the legislature's intent. *Moore v. Green*, 219 Ill. 2d 470, 479 (2006). The best indicator of that intent is the express language of the statute, which should be given its plain and ordinary meaning. *Wilkins v. Williams*, 2013 IL 114310, ¶ 14. In interpreting a statute, we must read the relevant provisions in their entirety and in their context within the broader framework of the act of which they are a part. See *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). We now turn to the Insurance Code.

¶ 14     The Code establishes the Fund, a nonprofit entity that protects holders of policies issued by now-insolvent insurers, and third-party claimants under those policies, when expected coverage ceases to exist. See *Hasemann v. White*, 177 Ill. 2d 414, 415-16 (1997); see also 215 ILCS 5/532 (West 2012). The Fund is not "a collateral or independent source of recovery" (*Lucas v. Illinois Insurance Guaranty Fund*, 52 Ill. App. 3d 237, 240 (1977)); it is "a source of last resort," whose role as a substitute insurer is subject to certain statutory limitations (*Illinois Insurance Guaranty Fund v. Farmland Mutual Insurance Co.*, 274 Ill.

App. 3d 671, 673 (1995)). Section 546(a) provides a key limitation, which ensures that potential claims on the Fund are reduced by the assets of solvent insurers, not assets of the Fund itself. That section, entitled "Other insurance," provides:

> "An insured or claimant shall be required first to exhaust all coverage provided by any other insurance policy, regardless of whether or not such other insurance policy was written by a member company, if the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund. The Fund's obligation under Section 537.2 shall be reduced by the amount recovered or recoverable, whichever is greater, under such other insurance policy. Where such other insurance policy provides uninsured or underinsured motorist coverage, the amount recoverable shall be deemed to be the full applicable limits of such coverage. To the extent that the Fund's obligation under Section 537.2 is reduced by application of this Section, the liability of the person insured by the insolvent insurer's policy for the claim shall be reduced in the same amount." 215 ILCS 5/546(a) (West 2012).

¶ 15    Under section 546(a), the Rogerses, as claimants under Imeri's policy with his now-insolvent insurer, were required to exhaust coverage provided by any other insurance policy, if their claim under such a policy arose from the same facts as Imeri's "covered claim" against the Fund. The Rogerses' claims under their automobile liability policy and Winterrowd's automobile liability policy, like Imeri's claim, were based on the accident. The amounts that the Rogerses recovered from their claims reduce the Fund's obligation.

¶ 16    Section 537.2 states that the Fund "shall be obligated to the extent of the covered claims." 215 ILCS 5/537.2 (West 2012). Section 534.3 defines a "covered claim" as "an unpaid claim for a loss arising out of and within the coverage of an insurance policy to which this Article applies and which is in force at the time of the occurrence giving rise to the unpaid claim *** made by a person insured under such policy or by a person suffering injury or damage for which a person insured under such policy is legally liable." Though the Guaranty Fund provisions do not define the term "legally liable," that concept lies at the foundation of our civil and criminal jurisprudence, and simply contemplates an obligation. See Black's Law Dictionary 997 (9th ed. 2009) (defining "liability" as "[t]he quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment"). In civil litigation, that obligation is an obligation to pay damages. See *id.* (defining "civil liability" as "[t]he state of being legally obligated for civil damages"). Thus, as the appellate court here observed, the Fund's obligation is linked with Imeri's obligation to pay damages. 2013 IL App (5th)110546, ¶ 13. In this case, Imeri's obligation cannot exceed $130,338.51. See 235 ILCS 5/6-21(a) (West 2012) ("in no event shall the judgment or recovery for injury to the person or property of any person exceed" the statutory cap). And that is the maximum extent of the Fund's obligation.

¶ 17    The Rogerses, however, ask us to ignore the plain language of the Guaranty Fund provisions, as well as the clear limit of the Dramshop Act, and to focus on the latter statute's requirement that "the jury shall determine the amount of damages to be recovered without regard to and with no special instructions as to the dollar limits on recovery." 235 ILCS 5/6-21(a) (West 2012). The Rogerses insist that the only way to read that requirement in harmony

with section 546(a) is to let the jury set the amount of damages, reduce that amount by any other insurance proceeds, and then, if necessary, reduce the resulting amount to the statutory cap.

¶ 18    *Guzman* correctly rejected that approach. There, a panel from the First District addressed the same certified question as the panel from the Fifth District in this case, but reached a different answer. The *Guzman* court looked to the Dramshop Act, and concluded that the defendant was "legally liable" to the plaintiffs only up to the maximum recovery possible under that Act. *Guzman*, 2013 IL App (1st) 122161, ¶ 26. The court distinguished *Kurth*, noting that, while that case determined the proper procedure for setoffs in dramshop cases generally, it did not interpret section 546(a) or determine the proper procedure for setoffs in dramshop cases involving defendants represented by the Fund. *Id.* ¶ 30.

¶ 19    The requirement that a jury determine damages in Dramshop Act cases is simply not relevant to the construction of section 546(a). Under that statute, the Fund's obligation cannot be expanded by a jury's verdict; it can only be reduced by other insurance. The setoff of the amount that the Rogerses received from the automobile liability insurance policies should come from Imeri's maximum dramshop liability.

¶ 20                                    CONCLUSION

¶ 21    For the reasons that we have stated, the judgment of the appellate court is reversed, and the cause is remanded to the circuit court for further proceedings.

¶ 22    Appellate court judgment reversed.

¶ 23    Cause remanded.