# Illinois Official Reports

## Supreme Court

---

### *Bayer v. Panduit Corp.*, 2016 IL 119553

---

| | |
|---|---|
| Caption in Supreme Court: | RONALD BAYER, Appellant, v. PANDUIT CORPORATION (Area Erectors, Inc., Appellee). |
| Docket No. | 119553 |
| Filed | September 22, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. William J. Haddad, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part. Circuit court judgment affirmed. |
| Counsel on Appeal | Clifford W. Horwitz, Thomas A. Kelliher, and Jay R. Luchsinger, all of Horwitz, Horwitz & Associates, Ltd., of Chicago, for appellant. |
| | Kevin J. Caplis and David M. Lewin, both of Querrey & Harrow, Ltd., of Chicago, for appellee. |
| | Jeffrey M. Alter, Hayley Graham Slefo, and Douglas A. Colby, all of Anesi, Ozmon, Rodin, Novak & Kohen, Ltd., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1 Where attorneys for a worker covered by the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2006)) bring a successful action against a third party to recover damages for personal injuries sustained by the worker in the course of his employment, thereby enabling the worker's employer to obtain reimbursement of the compensation benefits it is obligated to pay under the Workers' Compensation Act, the Act requires the employer to pay 25% of the gross amount it obtains in reimbursement as attorney fees, absent other agreement. 820 ILCS 305/5(b) (West 2006). In *Zuber v. Illinois Power Co.*, 135 Ill. 2d 407 (1990), we held that the gross amount of reimbursement subject to attorney fees under this statute includes not only workers' compensation benefits already paid at the time of the third-party recovery but also the amount of such benefits the employer will be relieved from having to pay in the future by reason of the worker's recovery in the third-party action. *Id.* at 418. The question presented by the case before us today is whether the value of future medical care should be included in this calculation. For the reasons that follow, we hold that it should.

¶ 2 BACKGROUND

¶ 3 Plaintiff, Ronald Bayer, was employed as an ironworker by Area Erectors, Inc. Area Erectors was hired by Garbe Iron Works to help build warehouse facilities for Panduit Corporation. While working on the Panduit warehouse project for Area Erectors, Bayer fell and sustained serious and permanent injuries. He is now quadriplegic.

¶ 4 Bayer filed a claim against Area Erectors under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2006)). The claim was honored by Area Erectors, which began making temporary total disability payments and payments for Bayer's medical expenses. These payments were substantial.

¶ 5 At the same time Bayer pursued his workers' compensation claim, he also brought an action in the circuit court of Cook County to recover damages from Panduit Corporation based on negligence. Bayer subsequently added Garbe Iron Works and a structural engineering company as additional defendants. Panduit, in turn, brought a third-party complaint for contribution against Area Erectors pursuant to the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 2006)), alleging that the company had been negligent by failing to ensure the safety of its employees, including Bayer. Area Erectors was also sued for contribution and breach of contract by Garbe Iron Works.

¶ 6 Bayer settled with Area Erectors, and the two filed a joint motion for a finding that the settlement was in good faith and that the settlement should be approved. That motion was granted. Area Erectors was thereby discharged from liability for any contribution to Panduit or Garbe. 740 ILCS 100/2(d) (West 2006). Various other claims between the parties were

ultimately dismissed or settled, leaving only Bayer's action for negligence against Panduit, which was tried before a jury in the fall of 2012. Bayer prevailed. Judgment was entered in his favor and against Panduit in the amount of $64 million.

¶ 7 Under section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 2006)), Area Erectors was entitled to recover out of that judgment the amount of compensation paid or to be paid by it to Bayer, including amounts paid or to be paid pursuant to subsection (a) of section 8 of the Act (820 ILCS 305/8(a) (West 2006)), which concerns medical expenses, vocational rehabilitation, and temporary partial disability benefits. [1] This right was incorporated into the settlement agreement between Area Erectors and Bayer. Area Erectors sought to enforce its right of recovery in a motion filed in December 2012. Its request was allowed in a pair of agreed orders entered by the circuit court in June 2013.

¶ 8 To protect an employer's rights to reimbursement under section 5(b) of the Act, courts may grant a credit to the employer for any amounts paid or to be paid by the employer to the injured worker under the Workers' Compensation Act or for which the employer has not been reimbursed and then suspend the employer's obligation to make future payments to the injured worker until the amount of the settlement or judgment obtained by the worker from a third party has been exhausted. *Freer v. Hysan Corp.*, 108 Ill. 2d 421, 425-28 (1985). That is precisely what the agreed orders entered in this case did. They confirmed Area Erectors' right to recover its past and future workers' compensation payments, set deadlines for determining the total amount of payments to which Area Erectors was entitled, and suspended future workers' compensation payments commencing on July 16, 2013. [2]

¶ 9 The foregoing matters are not in dispute. The sole issue before us in this appeal is the amount of attorney fees Area Erectors must pay Bayer's lawyers for the work they performed in securing the judgment that enabled the company to recover the benefits it had previously paid and to suspend benefit payments going forward. Section 5(b) of the Workers' Compensation Act provides that where, as here, "the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." 820 ILCS 305/5(b) (West 2006). In this case, there was no question

---

[1]Case law interpreting section 8 makes clear that the "compensation" an injured employee is entitled to receive for accidental injury not resulting in death includes not only compensation for lost wages but also payment for medical services (*McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 512 (1998)) and that amounts paid for medical services under section 8(a) are included in the sum for which an employer may obtain reimbursement out of third-party recoveries pursuant to section 5(b) (see *Crispell v. Industrial Comm'n*, 369 Ill. App. 3d 1022, 1028 (2006)).

[2]The suspension of payments did not, of course, affect Area Erectors' actual liability under the Workers' Compensation Act in any way. A credit formula that suspends future payments is simply an "expedient and accurate method for protecting the employer's rights" to reimbursement given limitations on the creation and use of liens. *Freer v. Hysan Corp.*, 108 Ill. 2d at 427. If payments had not been suspended, Bayer would have been required to reimburse Area Erectors out of his third-party recovery against Panduit each and every time he received a check for benefits under the Act until the recovery was exhausted. The credit and suspension procedure employed here streamlined the process, eliminated needless transaction costs, and reduced the burden on Bayer, whose injuries are grave and permanent.

- 3 -

that Bayer's lawyers were entitled to fees equal to 25% of the amount Area Erectors had paid for lost wages, medical expenses, and other compensable items under the Workers' Compensation Act prior to the time the workers' compensation payments were suspended. The controversy before us centers solely on the recovery of attorney fees with respect to the value of compensable benefits incurred *after* Area Erectors' obligation to make benefit payments was suspended by the court.

¶ 10     More than 25 years ago, this court held that the "gross amount of such reimbursement" subject to attorney fees under section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 2006)) includes not only workers' compensation benefits already paid at the time of the third-party recovery but also the amount of such benefits the employer will be relieved from having to pay in the future by reason of the plaintiff's recovery in the third-party action. *Zuber v. Illinois Power Co.*, 135 Ill. 2d 407, 418 (1990). Based on this authority, Bayer's attorneys asked the circuit court to award them attorney fees equal to 25% of the weekly wage payments and future medical payments Area Erectors would have had to pay but for suspension of the company's obligations under the Workers' Compensation Act following the judgment they secured from Panduit. To avoid double recovery of fees, Bayer's lawyers also requested that Area Erectors be ordered to pay the fees directly to Bayer himself.

¶ 11     Area Erectors did not challenge the right of Bayer's attorneys to a fee based on the suspended *wage* payments. It objected, however, to any claim for fees based on future *medical expenses*, asserting that such a claim was not supported by *Zuber* or the relevant provisions of the Workers' Compensation Act. The circuit court found this objection to be without merit. Based on the reasoning in *Zuber* and the language of section 5(b) of the Act (820 ILCS 305/5(b) (West 2006)), the circuit court concluded that the employer should be required to pay the statutory 25% attorney fee on the value of all of the injured employee's future losses compensable under the Workers' Compensation Act, including the employee's medical bills. Contrary to the request by Bayer's lawyers, however, the circuit court further held that payment for the statutory 25% attorney fees should go to Bayer's lawyers rather than to Bayer himself. Citing this court's decision in *In re Estate of Dierkes*, 191 Ill. 2d 326 (2000), the court opined that there "shall be no double recovery of attorney's fees" and that the statutory fees paid by Area Erectors to Bayer's attorneys were to assist Bayer in paying the fees he owed those attorneys under the contingency agreement he had with them with respect to the recovery against Panduit.

¶ 12     Following conclusion of the proceedings in the circuit court, Panduit filed an appeal challenging the circuit court's approval of the settlement agreement between Area Erectors and Bayer and dismissing its contribution claim against Area Erectors. Area Erectors also appealed. 2015 IL App (1st) 132252. Its appeal pertained solely to that portion of the circuit court's attorney fee award allowing recovery of fees based on the value of Bayer's future medical expenses. As it did in the circuit court, Area Erectors contended that such fees were not authorized by Illinois law and should not have been granted.

¶ 13     The appellate court affirmed the circuit court's judgment in part and reversed in part. Contrary to Panduit's contention, it concluded that the circuit court had not erred in approving the settlement agreement between Area Erectors and Bayer and dismissing the third-party contribution claim Panduit had filed against Area Erectors. 2015 IL App (1st) 132252, ¶¶ 33-35. The appellate court agreed with Area Erectors, however, with respect to the attorney

fee issue. In the appellate court's view, this court's decisions in *Zuber* and *In re Estate of Dierkes* are distinguishable and do not support the circuit court's ruling. Relying on an Indiana case, *Spangler, Jennings & Dougherty P.C. v. Indiana Insurance Co.*, 729 N.E.2d 117 (Ind. 2000), and interpreting the Workers' Compensation Act differently than the circuit court, the appellate court held that Area Erectors is not required to pay the statutory 25% attorney fee on the value of future medical expenses that it will be able to avoid paying as a result of the third-party action. 2015 IL App (1st) 132252, ¶¶ 46-50.

¶ 14     Bayer petitioned for leave to appeal (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015)), which we allowed. We also granted a motion by the Illinois Trial Lawyers Association for leave to file a brief *amicus curiae*. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). The matter is now before us for a decision on the merits.

¶ 15                                            ANALYSIS

¶ 16     As previously indicated, the sole question we are asked to resolve on this appeal is whether Area Erectors is required to pay the 25% attorney fee specified by section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 2006)) on the future medical expenses it will be spared from having to pay as a result of the successful third-party action brought by its employee, Bayer, against Panduit. No issues are raised as to any other aspect of the lower courts' judgments, and there is no dispute as to the pertinent facts.

¶ 17     Area Erectors' obligation to pay attorney fees pursuant to section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 2006)) turns entirely on how that and related provisions of the Act are construed. Interpretation of the Workers' Compensation Act presents a question of law. Our review is therefore *de novo*. *Cassens Transport Co. v. Illinois Industrial Comm'n*, 218 Ill. 2d 519, 524 (2006).

¶ 18     The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the intent of the legislature. *In re Estate of Dierkes*, 191 Ill. 2d at 331. The best indicator of that intent is the express language of the statute, which should be given its plain and ordinary meaning. *Rogers v. Imeri*, 2013 IL 115860, ¶ 13. In interpreting a statute, we must read the statute as a whole, considering the relevant provisions in their context and within the broader framework of the act of which they are a part. *Id.*

¶ 19     We have quoted portions of section 5(b) of the Act previously in this opinion. We shall set out the text of the law more fully here. The statute provides, in relevant part:

> "(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act. ***

Out of any reimbursement received by the employer pursuant to this Section the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." 820 ILCS 305/5(b) (West 2006).

¶ 20    The purpose of section 5(b) was discussed by our court in *In re Estate of Dierkes*. We explained there that

" 'Section 5(b) allows both the employer and the employee an opportunity to reach the true offender while preventing the employee from obtaining a double recovery.' [Citation.] [It] accords with 'the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer.' [Citation.]

However:

'It is equally elementary that the claimant should not be allowed to keep the entire amount both of his or her compensation award and of the common-law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse it for its compensation outlay, and to give the employee the excess. This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he or she would normally pay ***; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone.' [Citation.]

Section 5(b) of the Act reflects this commonsense concept:

'[A]n employee who has received compensation under the Act is required to reimburse the employer from any recovery the employee receives from a third party legally responsible for the employee's injuries. The obligation is to reimburse for the full amount of benefits paid or payable by the employer and a lien in favor of the employer is provided upon any recovery by the employee for the amount of the benefits. [Citation.] The employee is entitled to retain only that portion of a recovery from the tortfeasor which exceeds the benefits received under the Act from the employer.' [Citation.]" *In re Estate of Dierkes*, 191 Ill. 2d at 331-32.

¶ 21    The second paragraph of section 5(b), which deals with reimbursement of costs and fees associated with the action against the third party, is fully consistent with these equitable considerations. Added in 1957, it requires employers to contribute the necessary costs of their employees' recoveries against negligent third parties where the employer is to receive reimbursement from the recovery for workers' compensation payments made or to be made to the employee. It " 'is premised on the assumption that an employer should share in the fees and costs associated with the employee's lawsuit because the litigation benefits the employer by providing a fund from which the employer can obtain reimbursement of its workers' compensation payments' [citation], and operates 'to prevent an unjust enrichment on the part of the employer' [citation]." *Id.* at 333.

¶ 22    Under the plain language of section 5(b) of the Act and consistent with the purposes of that statute as explained in *In re Estate of Dierkes*, Area Erectors is clearly obligated to pay, as attorney fees, 25% of the gross amount of the workers' compensation payments for which it is able to obtain reimbursement as a result of Bayer's successful personal injury action against Panduit. The injury sustained by Bayer for which he is entitled to compensation under the Workers' Compensation Act "was caused under circumstances creating a legal liability for damages on the part of some person other than his employer [namely, Panduit] to pay damages." 820 ILCS 305/5(b) (West 2006). Bayer took legal action "against such other person to recover damages," which he was permitted to do "notwithstanding [his] employer's payment of or liability to pay compensation under [the Workers' Compensation] Act." *Id.* The action was successful, and judgment was "obtained [by] and paid [to]" (*id.*) Bayer in the amount of $64 million. From that amount, Bayer's employer, Area Erectors, had the right to "be paid *** the amount of compensation paid or to be paid by [it to Bayer] including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of [the] Act." *Id.* Among these included amounts are "all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury." 820 ILCS 305/8(a) (West 2006).

¶ 23    Area Erectors has, in fact, received reimbursement for workers' compensation payments it has already made to Bayer, including payments for medical expenses. So long as the amount of the judgment against Panduit is not exhausted, Area Erectors will continue to receive reimbursement for workers' compensation payments, including payments for medical expenses, it is required to make to Bayer in the future. This reimbursement, which as we have explained includes the amount of benefits Area Erectors will be relieved from having to pay as a result of the third-party recovery, directly benefits Area Erectors by reducing its financial obligations with respect to Bayer's injuries. Allowing Area Erectors to reap that benefit without having to share in any of the responsibility for compensating the attorneys who made it possible would result in precisely the type of unjust enrichment that section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 2006)) was designed to prevent. Because Area Erectors has no fee agreement with Bayer or Bayer's lawyers, the section 5(b) statutory 25% fee rate controls. See *In re Estate of Dierkes*, 191 Ill. 2d at 335.

¶ 24    Area Erectors can avoid the statutory 25% attorney fee on the value of future medical expenses it has been spared from having to pay only if those sums are deemed not to be part of the "gross amount of such reimbursement" it will receive within the meaning of section 5(b) for compensation benefits it owes. There is no basis in the law for such an interpretation, and we reject it.

¶ 25    The Workers' Compensation Act does not specifically define what constitutes "the gross amount" of reimbursement for purposes of section 5(b). The phrase must therefore be given its ordinary and popularly understood meaning. When describing an amount, the term "gross" is generally understood to mean the overall total prior to any deductions or adjustments. *Silva v. Electrical Systems, Inc.*, 183 Ill. 2d 356, 363 (1998). This would include reimbursement for medical expenses.

¶ 26    Nothing in the statute can be read as excluding such expenses or treating their reimbursement differently than reimbursement for any other financial obligations imposed on

employers under the Act. As noted earlier in this opinion, case law interpreting section 8 makes clear that the "compensation" an injured employee is entitled to receive for accidental injury not resulting in death includes not only compensation for lost wages but also payment for medical services (*McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 512 (1998)). Illinois courts have therefore recognized that amounts paid for medical services under section 8(a) are included in the sum for which an employer may obtain reimbursement out of third-party recoveries pursuant to section 5(b) (see *Crispell v. Industrial Comm'n*, 369 Ill. App. 3d 1022, 1028 (2006)).

¶ 27    Area Erectors has attempted to make the case that it should not have to pay fees on the value of future medical expenses it will be spared from having to pay because it will not actually be "reimbursed" for those expenses. This argument is also without merit.

¶ 28    Where, as here, an employer's obligation to continue payments for future expenses compensable under the Act has been suspended because the recovery from a third party exceeds the amount the employer owes, the employer will cease making actual payments to the injured worker. There being no actual payments, there will be no "reimbursement" for such payments in the same direct, literal way that reimbursement can be made for past workers' compensation payments made by the employer to the injured worker. For purposes of determining an employer's obligation to pay the statutory 25% attorney fees, however, the language and purpose of section 5(b) of the Act require that these circumstances be treated the same. We specifically so held in *Zuber v. Illinois Power Co.*, where we explained:

> "The first paragraph of section 5(b) provides that a compensation beneficiary who succeeds in a related damages action against a third party must pay to the employer, from the proceeds of that recovery, 'the amount of compensation paid or to be paid by' the employer to such beneficiary. The second paragraph of section 5(b) requires the employer to pay its proportionate share of costs and expenses from 'any reimbursement received by the employer pursuant to this Section' and, further, to pay as an attorney fee '25% of the gross amount of such reimbursement.' Clearly, the source of that reimbursement is found in the requirement of the first paragraph that from any third-party recovery the employee or his representative pay to the employer 'the amount of compensation paid or to be paid by him.' In our view, the references in section 5(b) to the employer's reimbursement and to the repayment to the employer of 'the amount of compensation paid or to be paid' denote one and the same thing. *Accordingly, the reimbursement in the second paragraph of section 5(b) is not limited to amounts accrued by the time of judgment or settlement, but rather includes as well the future compensation payments the employer is relieved from making by reason of the third-party recovery.*" (Emphasis added.) 135 Ill. 2d at 415-16.

¶ 29    It would be incongruous to hold otherwise. As noted earlier, where an injured worker covered by the Act obtains a third-party recovery and the court gives the employer credit against that recovery and suspends its future payments, the credit and suspension are simply an "expedient and accurate method for protecting the employer's rights" to reimbursement. *Freer v. Hysan Corp.*, 108 Ill. 2d at 427. The employer's financial obligations under the Act remain unchanged. Correspondingly, the value of the benefit accruing to the employer when the payments are suspended is no less than it would be if the employer made actual payments and then obtained reimbursement for those payments out of the proceeds of the recovery in the

third-party action. Because "[a]n employer benefits from the third-party recovery both when it is repaid workers' compensation benefits already paid to the plaintiff and when it is relieved of its obligation to make compensation payments in the future," "[i]t is appropriate to impose fees and costs in relation to both benefits, and clearly section 5(b) was intended to achieve that end." *Zuber*, 135 Ill. 2d at 416.

¶ 30    *Zuber* itself did not specifically address payments for future medical care. That is because there were none. The subject employee in that case died from his injuries. This factual distinction, however, does not mean that *Zuber* is not controlling here. The same rationale we adopted there is fully applicable in this case. As our discussion has already pointed out, the law is settled that *both* payments for medical services *and* payments for lost wages constitute compensation benefits an employee is entitled to receive under the Workers' Compensation Act. If credit for future wage payments qualifies as "reimbursement" of compensation benefits for purposes of section 5(b), and Area Erectors has never disputed that it does, there is no principled basis for holding that credit for future medical payments does not likewise qualify as "reimbursement" and therefore trigger the same obligation to pay the statutory attorney fees.

¶ 31    Nothing in *Zuber*'s discussion of the meaning and intent of section 5(b) of the Workers' Compensation Act can be read as suggesting otherwise. To the contrary, exempting the value of future medical payments from an employer's statutory attorney fee obligation would directly contradict a central teaching of *Zuber* and *In re Estate of Dierkes*, which came before it—namely, that section 5(b) was intended to insure that employers contribute to the costs of the litigation to the extent that they derive benefit from the litigation having been brought. See *Zuber*, 135 Ill. 2d at 416; *In re Estate of Dierkes*, 191 Ill. 2d at 333.

¶ 32    Area Erectors has suggested that the value of future medical payments should not be subject to attorney fees in the same way future wage payments are because the value of future wage payments is easy to calculate, while the future medical services Bayer will require are uncertain and may be disputed. We reject this argument as well. Aside from the fact that it would require us to recognize a distinction for which there is no basis in either the statute or the case law construing the statute, we note that any difficulties attendant to determining what future medical expenses are compensable under the Act for purposes of calculating attorney fees are equally applicable to Area Erectors' right to obtain reimbursement of payments for those expenses out of the third-party recovery won by Bayer's attorneys and, correspondingly, its right to continue to have its payment obligations suspended. Significantly, however, Area Erectors makes no claim that calculation problems pose any barrier to its right to rely on the third party recovery to cease the payments for future medical expenses it would otherwise be obligated to make. It cannot have it both ways. If calculation problems are no obstacle to its acceptance of the benefits it is able to reap from the third-party recovery pursuant to section 5(b) of the Act, the company cannot invoke such problems as an excuse for avoiding payment of its fair share of the attorney fees that made the recovery possible, as the second paragraph of section 5(b) mandates.

¶ 33    As an alternative basis for escaping its obligation to pay statutory attorney fees on the value of the medical expenses it has been relieved from having to pay, Area Erectors invokes section 16a(D) of the Workers' Compensation Act (820 ILCS 305/16a(D) (West 2006)). That statute provides that in the "establishment or approval of attorney's fees" by the Illinois Workers' Compensation Commission and owed by an employee or an employee's dependents for

services provided in connection with claims brought under the Act, "[n]o attorney's fees shall be charged with respect to compensation for undisputed medical expenses." 820 ILCS 305/16a(A), (D) (West 2006).

¶ 34    Area Erectors' reliance on this statute is misplaced. The matter before us does not concern an award of attorney fees by the Illinois Workers' Compensation Commission, it does not involve the fees owed by an employee or the employee's dependents for services provided in connection with a claim under the Act, and the fees are not for undisputed medical expenses. At issue here are the fees that a court may require an employer to pay following a third-party civil action where medical costs were contested and the plaintiff's successful recovery has enabled the employer to avoid having to pay benefits for which it would otherwise have been responsible. This is a very different situation and one to which section 16a(D) of the Act has no application. The appellate court below correctly recognized this as well (2015 IL App (1st) 132252, ¶ 44), and Area Erectors has cited no authority holding otherwise.

¶ 35    As an additional basis for contesting its obligation to contribute toward payment of attorney fees on the value of the future medical payments it will be spared from having to pay, Area Erectors urges us to follow a decision by the Indiana Supreme Court in *Spangler, Jennings & Dougherty P.C. v. Indiana Insurance Co.*, 729 N.E.2d 117 (Ind. 2000). The appellate court found *Spangler* to be instructive. 2015 IL App (1st) 132252, ¶ 50. Bayer, however, argues that the overall structure of Indiana's workers' compensation reimbursement provisions differs from the one in our state and that *Spangler* is therefore not helpful in resolving this case.

¶ 36    In our view, there is no need to explore the particulars of Indiana law. While the courts of this state will look to other jurisdictions for guidance when there is no Illinois precedent on point (*Pekin Insurance Co. v. Fidelity & Guaranty Insurance Co.*, 357 Ill. App. 3d 891, 898 (2005)), such is not the case here. As set forth above, there is ample controlling Illinois precedent to guide our decision. Under that precedent, and for the reasons we have already explained in detail, Area Erectors' attorney fee obligation extends to the value of the future medical expenses it will be spared from having to pay.

¶ 37    Area Erectors next contends that requiring it to pay the statutory 25% attorney fees on the value of future medical expenses will result in an impermissible double payment to Bayer's attorneys. This contention must also be rejected. Bayer's lawyers will not be paid twice for the same service. Under the second paragraph of section 5(b) of the Workers' Compensation Act, the statutory 25% attorney fee owed by Area Erectors is a simply a *contribution* to the attorney fees paid by Bayer on the recovery in the third-party action from which Area Erectors has benefitted and will continue to benefit so long as its payments under the Act are suspended. It is not a separate fee. *In re Estate of Dierkes*, 191 Ill. 2d at 336.

¶ 38    We note in this regard that because the statutory 25% attorney fee owed by Area Erectors represents the company's share of the total fee paid by Bayer in the third-party action, not a separate fee, and because Bayer has already paid the fee in full, it would have been appropriate for the circuit court to have ordered Area Erectors' share of the fees to be paid directly to Bayer himself, as Bayer's attorneys requested in their motion. That this was not done, however, is not problematic under the circumstances of this case. While the circuit court ordered Area Erectors to tender payment of its share of the fees to Bayer's lawyers rather than to Bayer himself, it did so with the caveat that there "shall be no double recovery of attorney's fees" and that the

statutory fees paid by Area Erectors to Bayer's attorneys were to assist Bayer in paying the fees he owed those attorneys under the contingency agreement he had with them with respect to the recovery against Panduit. Bayer has not challenged this ruling, and his lawyers have made clear that they understand that the fees Area Erectors pays them based on Bayer's future medical expenses will be forwarded to Bayer.

¶ 39     Finally, Area Erectors protests that allowing Bayer's attorneys to turn over to him the attorney fees they receive from Area Erectors may offend this court's Rules of Professional Conduct. It is odd that Area Erectors should raise this objection, considering that the very same procedure is apparently already being followed, without any objection by the company, with respect to the statutory fee payments it is making on the value of the wage benefits it has been relieved from having to pay. In any case, the argument is not supported by any authority and is patently without merit. The payments Bayer is receiving and will receive from his lawyers as a result of Area Erectors' contribution of its *pro rata* share of the fee pursuant to the requirements of section 5(b) do not constitute improper fee splitting. Rather, they are simply a partial refund of the fees that Bayer has already paid. Without the refund, the lawyers would end up with a higher fee than they are entitled to keep. Needless to say, the Rules of Professional Conduct do not prohibit an attorney from refunding fees to his or her client to avoid overpayment.

¶ 40                                              CONCLUSION

¶ 41     For the foregoing reasons, the circuit court did not err when it held that Area Erectors was obligated to pay attorney fees on the future medical expenses incurred by Bayer. Its judgment is therefore affirmed. To the extent that the appellate court set aside that aspect of the circuit court's ruling, its judgment is reversed. In all other respects, the judgment of the appellate court is affirmed.

¶ 42     Appellate court judgment affirmed in part and reversed in part.

¶ 43     Circuit court judgment affirmed.