NOTICE
Decision filed 03/20/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230763-U

NO. 5-23-0763

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| E.W., by His Mother and Next Friend, Chandres Johnson; and A.M., by Her Father and Next Friend, Antonio Brown, | ) ) ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 22-CH-75 |
| THE BOARD OF EDUCATION OF EAST ST. LOUIS SCHOOL DISTRICT #189, | ) ) ) | Honorable Julie K. Katz, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court erred by granting defendant's motion for summary judgment, where section 29-4 of the School Code (105 ILCS 5/29-4 (West 2000)) requires a school district to treat nonpublic school children, who otherwise qualify to use the school district's transportation, the same as it does the public school children attending the schools within its district.

¶ 2   Plaintiffs, E.W. and A.M., by their parents and next friends, Chandres Johnson and Antonio Brown, respectively, appeal the St. Clair County circuit court's order granting summary judgment in favor of defendant, the Board of Education of East St. Louis School District #189, and denying their cross-motion for summary judgment. Plaintiffs appeal, arguing that the court erred by (1) granting defendant's motion for summary judgment and denying plaintiffs' cross-motion for

1

summary judgment; (2) declining to find that defendant acted unlawfully and continued to act unlawfully for failing to provide plaintiffs with transportation from near their homes to their school and back; and (3) failing to enjoin defendant from not providing plaintiffs with transportation from near their home to their school and back. For the reasons that follow, we reverse the judgment of the circuit court and remand this matter with directions.

¶ 3                                    I. BACKGROUND

¶ 4     We limit our recitation to those facts relevant to our disposition of this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties.

¶ 5     This case stems from a periodic dispute between the Board of Education of East St. Louis School District #189 (defendant) and various students at the Sister Thea Bowman Catholic Elementary School (Bowman School). The dispute is based upon different interpretations of section 29-4 of the School Code (Code), which governs defendant's obligations for transporting students attending charter schools or nonpublic schools. 105 ILCS 5/29-4 (West 2000).

¶ 6     In 2015, in St. Clair County case No. 2015-CH-592,[1] parents of several students at Bowman School sued the Board of Education of East St. Louis School District #189. The school district, who previously provided transportation to Bowman students, stopped providing transportation to those students in August 2015, and the lawsuit followed. The St. Clair County circuit court issued a temporary restraining order on August 31, 2015, ordering the school district to reinstate bus services to Bowman students. On October 28, 2015, the court issued a preliminary injunction requiring the injunctive relief provided by the restraining order to remain in place until

_____

[1]Although St. Clair County case No. 2015-CH-592 is technically unrelated to the instant case, the defendant therein is the same defendant in this matter, and both cases arose from similar circumstances. Limited discussion of the 2015 lawsuit is relevant to understanding the genesis of this matter.

2

further order of the court. No further order was entered and the school district provided bus transportation to Bowman students until August 2022.

¶ 7    In August 2022, the school district once again told Bowman School it would no longer provide its students with bus transportation to their private school. Plaintiffs, E.W. and A.M., by their parents and next friends, Chandres Johnson and Antonio Brown, respectively, filed a complaint for declaratory judgment and injunctive relief on October 21, 2022.[2] Plaintiffs sought a declaratory judgment finding that defendant's refusal to provide free transportation to private school students was a violation of section 29-4 of the Code. *Id*. Plaintiff also sought a declaratory judgment finding that the preliminary injunction from the previous lawsuit, dated October 28, 2015, was still in effect and that plaintiffs were entitled to have the previous injunction enforced. Finally, plaintiff sought a temporary restraining order, and preliminary and permanent injunctions, enjoining defendant "from failing to provide appropriate bus transportation for Plaintiffs, using either a regular existing route nearest to Plaintiffs' homes and to Sister Thea Bowman, or by a separate regular bus route if that is found to be safer, more economical and more efficient, in accordance with the provision of 105 ILCS 5/29-4."

¶ 8    On October 21, 2022, plaintiffs also filed a motion for a temporary restraining order and a preliminary injunction asking to enjoin the defendant from failing to provide transportation to students and to restore bus transportation as it existed for the 2021-2022 school year.[3] Defendant filed a motion to dismiss the complaint and a response in opposition to plaintiffs' request for a

---

[2]Sister Thea Bowman Catholic Elementary School, a nonprofit parochial school, was also a plaintiff in the current litigation. Bowman voluntarily dismissed its claim against the defendant on January 9, 2023.

[3]Prior to stopping bus service for the Bowman students, defendant transported the Bowman students by utilizing a separate bus route for the Bowman students. Although this was not required of defendant, it was permissible under the statute, provided the operation of the separate route is "safer, more economical and more efficient than if such school district were precluded from operating separate regular routes." 105 ILCS 5/29-4 (West 2000).

temporary restraining order on October 25, 2022. On October 31, 2022, the circuit court held a hearing on plaintiffs' motion to consolidate, motion for temporary restraining order and preliminary injunction, defendants' motion to dissolve injunction and dismiss for want of prosecution, and defendants' combined motion to dismiss. On November 2, 2022, the court issued a written order (1) denying plaintiffs' request to consolidate the 2015 matter with the current case, finding that "consolidation solely in order to allow new Plaintiffs to attempt to enforce a seven (7) year old court order to which they were not a party prejudices Defendants' substantial right to defend Plaintiffs' claims"; and (2) granting defendant's motion to dissolve the 2015 injunction and dismissing the claim for want of prosecution, determining that the 2015 "case need not be left open in order for this Court to grant relief to Plaintiffs herein."

¶ 9    Regarding defendant's combined motion to dismiss, the circuit court granted the portion that sought to dismiss Arthur Culver, superintendent of the school district, as a party to the case. The court granted in part and denied in part plaintiffs' motion for temporary restraining order and preliminary injunction. The motion was partially granted in that the court ordered the parties to confer and identify "regular existing bus route(s) that can pick up Sr. Thea Bowman School students nearest their homes and drop them off near Sr. Thea Bowman School in a safe manner, affording them transportation in accordance with Section 29-4" of the Code. The motion was denied in all other respects. On March 28, 2023, defendant filed a verified answer in response to plaintiffs' complaint.

¶ 10    Defendant filed a motion for summary judgment on June 28, 2023. On July 24, 2023, plaintiffs filed a cross-motion for summary judgment and a response to defendant's motion for summary judgment, as well as a memorandum in support of their pleadings. Thereafter, both parties filed various replies to the other's motions and memoranda. The court heard the parties'

4

motions on August 24, 2023. At the end of the hearing, the circuit court asked both sides to submit proposed orders by August 29, 2023. On August 31, 2023, the court entered an order in favor of defendant. This timely appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12     On appeal, plaintiffs argue that the circuit court erred by granting defendant's motion for summary judgment and denying their cross-motion for summary judgment. Specifically, plaintiffs argue that the court's interpretation of the statute is in error, because it leads to the conclusion that section 29-4 of the Code does not require defendants to transport private school students from a bus stop near their homes to their school. For these reasons, plaintiffs contend that their cross-motion for summary judgment should have been granted. Defendant maintains that the court was correct in its interpretation of the statute and asks that this court affirm the circuit court. For the reasons that follow, we agree with plaintiffs and reverse and remand.

¶ 13     "Rulings on motions for summary judgment are reviewed *de novo*." *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34. Motions for summary judgment are governed by section 2-1005 of the Code of Civil Procedure, which provides that summary judgment should be granted only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020).

¶ 14     "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. "[R]eview of an order denying a motion for summary judgment is proper where the order also granted a cross-motion for summary judgment on the same claim or claims ***." *Wolfram Partnership, Ltd. v. La Salle National Bank*, 328 Ill. App. 3d 207, 216 n.2 (2001).

5

¶ 15    First, we address defendant's claim that this court should affirm the circuit court's decision based upon defendant's argument that plaintiffs argued, in both the circuit court and this court, an interpretation of the statute that is different from the statutory interpretation that plaintiffs pled in their verified complaint. In support of its argument, defendant relies on *Gold Realty Group Corp. v. Kismet Café, Inc.*, 358 Ill. App. 3d 675 (2005), for the proposition that a court may not grant summary judgment on an issue not properly pled in the complaint. *Id.* at 679-80.

¶ 16    In their complaint, plaintiffs requested that the circuit court require defendant "provide appropriate bus transportation for plaintiffs, using either a regular existing route nearest to plaintiffs' homes and to Sister Thea Bowman, or by a separate regular bus route if that is found to be safer, more economical and more efficient, in accordance with the provisions of 105 ILCS 5/29-4." Defendant observes that plaintiff later argued that "[t]he statute directs school districts to provide transportation for nonpublic school students either (i) from the student's home located on or near a regular route to their schools; or (ii) from the student's school located on a regular route to their homes," and that "[t]he statute does not require that nonpublic school students must live on or near Defendant's regular routes AND that the school be located on the same regular route." Defendant contends that plaintiffs' shift in their interpretation of the statute bars them from seeking relief in this court. We disagree.

¶ 17    *Gold Realty* concerns a forcible entry and detainer matter in which the plaintiff-landlord sued for unpaid rent and possession of the premises at issue for nonpayment of the rent. 358 Ill. App. 3d at 676. The plaintiff's requested remedy was based upon paragraph 19 of the lease. *Id.* After the defendant filed an answer and asserted two affirmative defenses, the plaintiff filed a motion for use and occupancy of the premises, ultimately relying on paragraph 11 of the lease. *Id.* After the plaintiff's motion for use and occupancy was granted, the plaintiff filed a motion for

6

summary judgment based upon yet another provision of the lease, paragraph 13. *Id.* at 678. The trial court granted the plaintiff's motion for summary judgment, and the defendant appealed. *Id.* Relying in part on *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905 (1994), the *Gold Realty* court reversed, finding that a trial court cannot grant a motion for summary judgment based upon an issue not properly pled in the moving party's complaint, directly or indirectly. *Id.* at 679-80. Notably, the *Gold Realty* court found that the facts alleged in the complaint were insufficient to give the defendants notice of the issue upon which the plaintiff sought relief. *Id.* at 680. Moreover, *Pagano* was a personal injury case where summary judgment was granted in favor of the defendant, and the plaintiff-appellant raised a new theory of liability for the first time on appeal. 257 Ill. App. 3d at 910-11.

¶ 18    We find *Gold Realty* and *Pagano* distinguishable. From the outset of this case, plaintiffs maintained that section 29-4 of the Code requires defendant to provide Bowman students with transportation to and from school. We do not find that plaintiffs' interpretation of the statute, from the initial complaint to their subsequent pleadings, shifted their theory of the case or that their explanations of what the statute requires are inconsistent with each other. To the extent that it can be said that plaintiffs shifted their interpretation of the statute, we find any such shift immaterial. Defendant made no claim of unfair surprise or that they were not provided notice of plaintiffs' theory. Rather, it appears that defendant attempts to avoid implementing public policy and their duty by employing a technical procedural bar to this litigation. Therefore, we find that the circuit court erred in its determination that plaintiffs are precluded from receiving summary judgment based upon their positing alternative interpretations of the statute.

¶ 19    Turning to the merits, as noted above, the dispute in this case centers on the interpretation of section 29-4 of the Code. 105 ILCS 5/29-4 (West 2000). That statute reads, in pertinent part:

7

"Pupils attending a charter school or nonpublic school. The school board of any school district that provides any school bus or conveyance for transporting pupils to and from the public schools shall afford transportation, without cost, for children who attend a charter school or any school other than a public school, who reside at least 1½ miles from the school attended, and who reside on or along the highway constituting the regular route of such public school bus or conveyance, such transportation to extend from some point on the regular route nearest or most easily accessible to their homes to and from the school attended, or to or from a point on such regular route which is nearest or most easily accessible to the school attended by such children. *** The person in charge of any charter school or school other than a public school shall certify on a form to be provided by the State Superintendent of Education, the names and addresses of pupils transported and when such pupils were in attendance at the school. If any such children reside within 1½ miles from the school attended, the school board shall afford such transportation to such children on the same basis as it provides transportation for its own pupils residing within that distance from the school attended.

Nothing herein shall be construed to preclude a school district from operating separate regular bus routes, subject to the limitations of this Section, for the benefit of children who attend a charter school or any school other than a public school where the operation of such routes is safer, more economical and more efficient than if such school district were precluded from operating separate regular bus routes." *Id.*

¶ 20    Our review of issues involving statutory construction is *de novo* and is guided by well-established rules. *In re Detention of Lieberman*, 201 Ill. 2d 300, 307 (2002). The principal objective of statutory construction is to determine and give effect to the legislature's intent. *In re Detention of Powell*, 217 Ill. 2d 123, 135 (2005). "All other rules of statutory construction are subordinate to this cardinal principle." *Id.* The best evidence of the legislative intent is the language of the statute itself, and the language should be "given its plain, ordinary and popularly understood meaning." *Id.* "Where the language of a statute is clear and unambiguous, courts may not resort to aids of statutory construction. [Citation.] However, if the statutory language is ambiguous, a court may consider other interpretive aids such as legislative history to resolve the ambiguity and determine the legislative intent." *Id.* The words and phrases contained within the language of a statute should not be considered in isolation, but must be interpreted in light of other relevant

8

provisions of the statute as a whole. *Williams v. Staples*, 208 Ill. 2d 480, 487 (2004). If possible, we must give effect to every word, clause, and sentence and must not construe a statute in a way that renders any part inoperative, superfluous, or insignificant. *Bauer v. H.H. Hall Construction Co.*, 140 Ill. App. 3d 1025, 1028 (1986). When construing a statute, courts "presume that the legislature, in enacting the statute, did not intend absurdity, inconvenience, or injustice." *Powell*, 217 Ill. 2d at 135.

¶ 21    Turning to the language of the statute, by using the word "shall," the legislature imposed a mandatory duty on public school boards who provide transportation to their students to likewise provide transportation to the students attending charter schools and any school other than a public school. *Scott v. City of Chicago*, 2015 IL App (1st) 140570, ¶ 19 ("Typically, use of the word 'shall' in a statutory provision indicates that the legislature intended a mandatory, rather than a directory, provision." (Internal quotation marks omitted.)). Defendant does not deny it has this duty.

¶ 22    Rather, the crux of the dispute between the parties is the meaning of the phrase "such transportation to extend from some point on the regular route nearest or most easily accessible to their homes to and from the school attended, or to or from a point on such regular route which is nearest or most easily accessible to the school attended by such children." 105 ILCS 5/29-4 (West 2000). Plaintiffs argue this language requires defendant to transport Bowman students "from or near their homes to their school OR to a point which is nearest or most easily accessible to their school—just as Defendant transports their students from or near their homes to and from their Dist[rict] 189 schools." Defendant, on the other hand, argues that the circuit court was correct in its determination that section 29-4 of the Code only requires a public school district to transport nonpublic school students to and from points on its regular routes that are nearest to their homes

9

and to and from points on its regular routes that are nearest to the schools they attend. In support of its position, defendant relies on language from this court's decision in *C.E. v. Board of Education of East St. Louis School District No. 189*, 2012 IL App (5th) 110390, wherein this court determined that section 29-4 of the Code did not require "school buses *** to 'go out of their way' to transport nonpublic school students." *Id.* ¶ 10. However, defendant's reliance on *C.E.* is misplaced.

¶ 23 The issue facing the court in *C.E.* was separate and distinct from the issue now before this court. In *C.E.*, the appellate court was called upon to determine whether section 29-4 required the defendant to "provide bus service on days when the district schools are not in session but the Catholic school is in session." *Id.* ¶ 8. This court concluded "that the legislative intent is that transportation be provided to nonpublic school students only on the same basis on which it is provided to public school students, and that the purposes of the statute be effected while minimizing cost to the public school district and without interfering with its convenience or efficiency." *Id.* ¶ 9. The *C.E.* court discussed the legislative intent behind section 29-4:

"This legislative intent is evident in the statute's requirement that nonpublic school students who wish to use school district transportation reside on or along the highway constituting the regular route of the school bus. The school buses are not required to 'go out of their way' to transport nonpublic school students. This legislative intent is also evident in the statute's permission for school districts to establish a separate route for nonpublic school students, but only if the operation of such routes is safer, more economical, and more efficient for the school district. Finally, this legislative intent is evident in the statute's provision that the school district may transport nonpublic school students who live within 1½ miles of their school only 'on the same basis as it provides transportation to its own pupils residing within that distance from the school attended.' To require the public school district to transport nonpublic school students even on days when the public schools are not in session is not consistent with this legislative intent." *Id.* ¶ 10.

¶ 24 Ultimately, the *C.E.* court concluded that

"the legislature took care to ensure that nonpublic school students received no more in the way of transportation than do public school students and that the

10

transportation of nonpublic school students not increase the school district's cost or interfere with its convenience or efficiency. Section 29-4 simply allows nonpublic school students to utilize the public school district's existing bus transportation and nothing more." *Id.* ¶ 12.

¶ 25 We agree with *C.E.*'s conclusion that a school district need not operate buses for private school students on days when the public schools are not in session. Defendant, however, interprets the language in *C.E.* too broadly. For example, *C.E.*'s statement that section 29-4 is written to ensure "that the transportation of nonpublic school students [does] not increase the school district's cost or interfere with its convenience or efficiency" is certainly true within the context of the issue that was before it: whether the public school district was required to provide transportation to private school students on days when the public schools were not in session. It is axiomatic that transporting private school students is going to increase a school district's costs. Under the statute, these additional costs only become a consideration when a public school district has determined that the establishment of separate routes for the private school children is "safer, more economical and more efficient than if such school district were precluded from operating separate regular bus routes." 105 ILCS 5/29-4 (West 2000).

¶ 26 Defendant's interpretation of the statute ignores the legislature's inclusion of the word "extend" in the mandate requiring that "such transportation to *extend* from some point on the regular route nearest or most easily accessible to their homes to and from the school attended, or to or from a point on such regular route which is nearest or most easily accessible to the school attended by such children." (Emphasis added.) *Id.* "Extend" has multiple definitions, at least two of which are potentially applicable to section 29-4. For example, The American Heritage Dictionary of the English Language defines "extend" as follows: "extend ***. 1. a. To cause (something) to be longer, wider, or cover more area: *extended the subway line into the next town.* *** 2. *** b. To make available; provide: *extend credit to qualified purchasers*." (Emphases in

11

original.) The American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=extend (last visited Mar. 7, 2025).

¶ 27    We find that, within the context of section 29-4, "extend" means "[t]o cause (something) to be longer, wider, or cover more area." Not only is this the "plain, ordinary and popularly understood meaning" (*Powell*, 217 Ill. 2d at 135) of the word "extend," but this conclusion is consistent with the fact "that section 29-4 was enacted for the secular legislative purpose of protecting the health and safety of children traveling to and from nonpublic schools." *Board of Education, School District No. 142 v. Bakalis*, 54 Ill. 2d 448, 461 (1973).

¶ 28    Defendant's interpretation of the statute, which would seemingly rely upon defining "extend" to mean "[t]o present; offer," would allow defendant to designate pick-up and drop-off points without regard for the health and safety of nonpublic school children. Such a reading of the statute is at odds with the legislative purpose behind enacting the statute. We note that, in addition to defendant's statutory duty to provide transportation for nonpublic school students, Illinois common law imposes "a duty upon school districts, their officials and employees in selecting bus routes and pick-up points as they discharge their statutory obligation to transport pupils." *Posteher v. Pana Community Unit School District No. 8*, 96 Ill. App. 3d 709, 712-13 (1981). "It is obvious that a school district or its officers cannot select bus routes and pick-up points with impunity, they cannot act arbitrarily or capriciously, they cannot act with disregard for the safety, comfort and well-being of their pupils. More is required by law." *Id.* at 712.

¶ 29    We find further support for our determination in the language of the statute itself. Section 29-4 provides that "[i]f any such children reside within 1½ miles from the school attended, the school board shall afford such transportation to such children on the same basis as it provides transportation for its own pupils residing within that distance from the school attended." 105 ILCS

12

5/29-4 (West 2000). This language evidences the legislature's intent that a school district must treat the nonpublic school children (who otherwise qualify to use the school district's transportation) the same as it does the public school children attending the schools within its district. Contrary to defendant's interpretation of the statute, this means that the school district is obligated to pick up Bowman students in the same fashion that it does its own students. Similarly, the school district is required to deliver those children to their school, just as it does its own students. Dropping the Bowman students off at a location other than their school is contrary to the statute, and contrary to the "legislative purpose of protecting the health and safety of children traveling to and from nonpublic schools." *Bakalis*, 54 Ill. 2d at 461.

¶ 30    Accordingly, the circuit court erred by granting defendant's motion for summary judgment and denying plaintiffs' cross-motion for summary judgment. As such, we vacate the court's order granting summary judgment to defendants, enter judgment in favor of plaintiffs on their motion for summary judgment, and remand to the circuit court with directions.

¶ 31                                III. CONCLUSION

¶ 32    For the foregoing reasons, we reverse the order of the circuit court of St. Clair County granting summary judgment in favor of Board of Education of East St. Louis District #189 and denying plaintiffs' motion for summary judgment. Summary judgment is entered in favor of plaintiffs. We remand to the circuit court with directions to grant plaintiffs' requests for declaratory judgment and injunctive relief in accordance with the requirements of section 29-4 of the Code and consistent with the order of this court.

¶ 33    Reversed and remanded with directions.

13