**2026 IL 131757**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 131757)

E.W., By His Mother and Next Friend, Chandres Johnson *et al.*, Appellees, v. THE BOARD OF EDUCATION OF EAST ST. LOUIS SCHOOL DISTRICT NO. 189, Appellant.

*Opinion filed June 25, 2026.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Neville and Justices Holder White and Tailor concurred in the judgment and opinion.

Justice Cunningham dissented, with opinion, joined by Justices Overstreet and Rochford.

**OPINION**

¶ 1     Plaintiffs, E.W. and A.M., are elementary school students attending Bowman Catholic Elementary School, a nonpublic school located in East St. Louis. Their respective parents, Chandres Johnson and Antonio Brown, brought an action for

declaratory and injunctive relief against defendant, the Board of Education of East St. Louis School District No. 189 (District), alleging that the District's failure to provide bus transportation to their children violated section 29-4 of the School Code (105 ILCS 5/29-4) (West 2022)). The circuit court of St. Clair County granted the District's motion for summary judgment, finding the transportation afforded to nonpublic schoolchildren under section 29-4 was limited to the District's existing regular bus routes and section 29-4 did not require the District to modify its regular bus routes to transport nonpublic schoolchildren to and from their school.

¶ 2        The appellate court reversed, holding section 29-4 "requires a school district to treat nonpublic school children, who otherwise qualify to use the school district's transportation, the same as it does the public school children attending the schools within its district." 2025 IL App (5th) 230763-U, ¶ 1. This meant, according to the appellate court, that section 29-4 requires the District to modify its regular routes to accommodate nonpublic schoolchildren. See *id.* ¶ 28. For the reasons that follow, we reverse the judgment of the appellate court.

¶ 3                                            I. BACKGROUND

¶ 4        For a period prior to August 2022, the District provided bus services to children attending Bowman Catholic Elementary School (Bowman), a nonpublic school. In August 2022, however, the District informed Bowman that it would no longer provide bus services to children attending Bowman due to a shortage of bus drivers.

¶ 5        Plaintiffs, Chandres Johnson and Antonio Brown, are parents of children attending Bowman. Both children reside in East St. Louis, and their homes are more than 1½ miles from Bowman. Both children also live along a highway that composes one of the regular routes of the District's school buses. Plaintiffs filed a complaint for declaratory and injunctive relief on behalf of their children against the District seeking an order compelling the District to provide their children with bus transportation to and from Bowman. The complaint alleged that the District's refusal to provide their children with bus transportation violated section 29-4 of the School Code, which requires a district providing bus transportation to public school students to also provide bus transportation to nonpublic school students. The complaint requested an order requiring the District to provide bus transportation to

plaintiffs' children by either a regular existing route or a separate regular bus route in accordance with section 29-4 of the School Code.

¶ 6    Plaintiffs then filed a motion for a temporary restraining order. The motion sought to compel the District to provide transportation to their children using either an existing bus route or a separate bus route. The District opposed the motion, arguing that section 29-4 only required it to provide transportation on its existing bus routes. In the District's view, section 29-4 did not require the District to create a separate route to accommodate nonpublic schoolchildren.

¶ 7    Following a hearing, the circuit court partially granted plaintiffs' motion for a temporary restraining order. The circuit court denied plaintiffs' motion to the extent it sought an order compelling the District to provide transportation to nonpublic school students via a separate bus route. The court found that section 29-4 only required the District to provide free bus transportation to nonpublic school students on its existing routes. To that end, the circuit court granted plaintiffs' motion to the extent it sought an order compelling the District to provide their children with bus transportation on the District's regular routes. However, the circuit court noted that plaintiffs' pleadings failed to identify an existing bus route that plaintiffs sought to utilize. The court ordered the parties to confer and identify an existing bus route to provide plaintiffs' children with transportation in accordance with section 29-4. There are conflicting statements in the record as to the success or failure of that meeting. Nevertheless, the record shows that no suitable route was identified.

¶ 8    Subsequently, the District filed a motion for summary judgment. The District's arguments generally mirrored those made in its response to plaintiffs' motion for a preliminary injunction. It argued that section 29-4 only required the District to provide free bus transportation on its existing regular bus routes and no more.

¶ 9    Plaintiffs filed a response to the District's motion for summary judgment along with their own cross-motion for summary judgment. Their arguments shifted from those made in the complaint and motion for preliminary injunction. Plaintiffs now argued that section 29-4 required the District to modify its regular routes to accommodate transporting nonpublic schoolchildren to and from their school. Plaintiffs noted that some regular routes went near their homes but not near Bowman or vice versa. Plaintiffs contended that section 29-4 required the District to either (1) use a regular route near plaintiffs' home and transport them directly to

Bowman (modifying the route so that it dropped their children off at Bowman) or (2) use a route near Bowman and take them directly to their home (modify the route to take the children directly to their home). Alternatively, plaintiffs contended that the children could be transferred between two routes.

¶ 10    The District's response noted the change in plaintiffs' position and how plaintiffs no longer sought transportation on a regular bus route. Now, plaintiffs sought transportation on a route near their homes to Bowman or on a route near Bowman to their homes. The District argued that such a demand required the District to alter its routes to accommodate plaintiffs' transportation. The District contended that request was beyond the scope of section 29-4, which only provided transportation on the District's existing bus routes.

¶ 11    Following a hearing, the circuit court granted summary judgment in favor of the District. Again, the circuit court found that the scope of transportation afforded by section 29-4 was limited to points on the regular routes of the bus service. It therefore rejected plaintiffs' argument that section 29-4 required the District to modify its routes to pick up the students at a point near their homes and take them to school or the opposite. Despite the statutory obligation to provide transportation on the regular routes, the circuit court noted that plaintiffs never identified an existing regular route they sought to utilize.

¶ 12    On appeal, the dispute turned on the appropriate interpretation of section 29-4. *Id.* ¶ 12. The appellate court was asked to interpret the meaning of the phrase, " 'such transportation to extend from some point on the regular route nearest or most easily accessible to their homes to and from the school attended, or to or from a point on such regular route which is nearest or most easily accessible to the school attended by such children.' " *Id.* ¶ 22 (quoting 105 ILCS 5/29-4 (West 2000)).

¶ 13    The appellate court noted the inclusion of the word "extend" in the statutory text. Specifically, " 'such transportation to *extend* from some point on the regular route.' " (Emphasis in original.) *Id.* ¶ 26 (quoting 105 ILCS 5/29-4 (West 2000)). In this context, the appellate court believed that *extend* meant " '[t]o cause (something) to be longer, wider, or cover more area.' " *Id.* (quoting American Heritage Dictionary of the English Language Online, https://ahdictionary.com/word/search.html?q=extend (last visited Mar. 7, 2025)). The appellate court observed how section 29-4 also provided transportation to nonpublic

schoolchildren residing less than 1½ miles from the school attended, "on the same basis as it provides transportation for its own pupils residing within that distance from the school attended." (Internal quotation marks omitted.) *Id.* ¶ 29. In the appellate court's view, this language "evidence[d] the legislature's intent that a school district must treat the nonpublic school children (who otherwise qualify to use the school district's transportation) the same as it does the public school children attending the schools within its district." *Id.* This meant "the school district is obligated to pick up Bowman students in the same fashion that it does its own students" and "the school district is required to deliver those children to their school, just as it does its own students." *Id.* Consequently, the appellate court reversed the circuit court's order granting summary judgment in favor of defendant and remanded with directions to grant plaintiffs' request for declaratory judgment and injunctive relief consistent with its order. *Id.* ¶ 32.

¶ 14        We allowed the District's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Dec. 7, 2023). We also allowed Join Hands ESL and Every Child Education Equity Project to file an *amicus curiae* brief in support of plaintiffs' position. See. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 15                                II. ANALYSIS

¶ 16        We are asked to determine the scope of transportation a local school district must provide to nonpublic school students living at least 1½ miles from their school under section 29-4 of the School Code (105 ILCS 5/29-4 (West 2022)). Specifically, the question is whether section 29-4 limits the scope of transportation to points along the regular bus routes or broadly requires modification of the regular bus routes to accommodate transporting nonpublic schoolchildren. The appeal comes before this court from a circuit court order granting the District's motion for summary judgment and denying plaintiffs' cross-motion for summary judgment. When parties file cross-motions for summary judgment, they agree that there is no genuine issue of material fact and the case may be decided as a matter of law. *Jones v. Municipal Employees' Annuity & Benefit Fund of Chicago*, 2016 IL 119618, ¶ 26. Given that the instant case "involves the circuit court's ruling on cross-motions for summary judgment and requires statutory construction, our review is *de novo*." *Iwan Ries & Co. v. City of Chicago*, 2019 IL 124469, ¶ 18.

¶ 17    The principles guiding our interpretation of section 29-4 are well established. Our primary goal is to ascertain and give effect to the intent of the legislature. *Id.* ¶ 19. The plain and ordinary meaning of the statutory text provides the most reliable indicator of legislative intent. *Oswald v. Hamer*, 2018 IL 122203, ¶ 10. The statute must also be viewed as a whole and not in isolation. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 25. Words and phrases must be construed in context to other relevant statutory provisions. *Id.* The court may also consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Chicago Teachers Union, Local No. 1 v. Board of Education of Chicago*, 2012 IL 112566, ¶ 15.

¶ 18    Section 29-4 "was enacted for the secular legislative purpose of protecting the health and safety of children traveling to and from nonpublic schools." *Board of Education, School District No. 142 v. Bakalis*, 54 Ill. 2d 448, 461 (1973). Under section 29-4, "[t]he school board of any school district that provides any school bus or conveyance for transporting" students to and from public schools "shall" afford free transportation to "children who attend a charter school or any school other than a public school." 105 ILCS 5/29-4 (West 2022). In relevant part, nonpublic schoolchildren qualify for free transportation if they reside "at least 1½ miles from the school attended" and reside "along the highway constituting the regular route" of the public school bus. *Id.*

¶ 19    There is no dispute that the District provides school bus transportation services to and from public schools. There is also no dispute that E.W. and A.M. satisfy the criteria to be entitled to transportation as nonpublic school students. They reside at least 1½ miles from Bowman, and they reside on or along a highway constituting the regular route of the District's regular bus routes. Having met these requirements, the District is statutorily required to afford transportation without cost to these students. Section 29-4 defines the scope of transportation: "such transportation to extend from some point on the regular route nearest or most easily accessible to their homes to and from the school attended, or to or from a point on such regular route which is nearest or most easily accessible to the school attended by such children." *Id.*

¶ 20    Plaintiffs interpret the scope of section 29-4 as providing two options to the District: provide transportation from or near their homes to their school directly or to a point that is nearest and most easily accessible to their school. The District, on the other hand, contends that the transportation required by section 29-4 is limited to its regular routes. As such, the District contends that section 29-4 only requires the District to pick up and drop off a nonpublic school student at the points on its regular route nearest or most easily accessible to the student's home and school.

¶ 21    In reviewing the language at issue, we find the strongest indicator of legislative intent is the use of the term "regular route" in defining the scope of transportation. Section 29-4 defines the two locations along the "regular route" where the District is to offer transportation. See *id.* The first clause defines the location with respect to the child's residence "to and from the school." *Id.* The pickup and drop-off point at the child's residence is the point on the regular route "nearest or most easily accessible to" the child's home. *Id.* The second clause defines the location "on such regular route" for pickup and drop-off at the child's school. *Id.* That location is defined as the point on "such regular route" that is "nearest or most easily accessible" to the school attended. *Id.*

¶ 22    It is significant that the legislature defined the points of pickup and drop-off as points along the regular route that are nearest or most easily accessible to the child's school and home, and not a point that is nearest and closest to the child's home or school in general. By defining the scope of transportation as points along the regular route, the legislature limited the scope of transportation to provide for pickup and drop-off at points along the already existing regular route. This evidences a clear legislative intent that section 29-4 would not operate to require a local school district to modify its regular bus routes to accommodate transporting nonpublic schoolchildren. For this reason, the appellate court erred in defining the term *extend* as "[t]o cause (something) to be longer, wider, or cover more area." (Internal quotation marks omitted.) 2025 IL App (5th) 230763-U, ¶ 27. Nothing within section 29-4 requires the district to modify its regular routes. See generally *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶ 22 (noting how our rules of statutory construction do not permit the court to add new limitations not expressed by the legislature). Instead, "extend" in this context means "to make available." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/extend (last visited Apr. 28, 2026) [https://perma.cc/ATV6-LE5Q].

¶ 23    Of course, nothing within section 29-4 prohibits the District from modifying its regular bus routes to take nonpublic schoolchildren directly to and from their school. And the District has the discretion under section 29-4 to operate a separate bus route "for the benefit of [nonpublic schoolchildren] where the operation of such routes is safer, more economical and more efficient than if such school district were precluded from operating separate regular bus routes." 105 ILCS 5/29-4 (West 2022). Additionally, it appears the District may be reimbursed for the costs of transporting nonpublic schoolchildren. See 23 Ill. Adm. Code 120.30(a)(3) (2020) (allowing reimbursement for transportation services provided to nonpublic school pupils where transportation is afforded on the same basis as transportation services for public school pupils in section 29-4). Section 29-4, however, does not require the District to modify its regular bus routes or create a separate bus route to transport nonpublic schoolchildren. In short, there is no language within section 29-4 requiring the District to "go out of [its] way" to transport nonpublic school students. (Internal quotation marks omitted.) *C.E. v. Board of Education of East St. Louis District No. 189*, 2012 IL App (5th) 110390, ¶ 10 (holding section 29-4 does not require a public school district to provide transportation to nonpublic schoolchildren on days public schools are not in session).

¶ 24    Plaintiffs' interpretation largely relies on the use of the word "or" in section 29-4. Specifically, the transportation is to extend "from some point on the regular route nearest or most easily accessible to their homes to and from the school attended, *or* to or from a point on such regular route which is nearest or most easily accessible to the school attended." (Emphasis added.) 105 ILCS 5/29-4 (West 2022). Plaintiffs contend the use of "or" between the phrases "to and from the school attended" and "to or from a point on such regular route which is nearest or most easily accessible to the school" means the District has two options: either transport the child directly to the child's school or, "at the very least," to a point "nearest or most easily accessible to the school" on the regular route. We disagree.

¶ 25    The phrase "to and from the school attended" in the first clause is meant to define the pickup and drop-off location at the child's home, *i.e.*, the point on the regular route nearest or most easily accessible to the child's home *to and from* school. It does not define the pickup and drop-off location at the school. Rather, that point is defined in the second clause, which is the point on the regular route nearest or most easily accessible to the school attended. The word "or" in this

context is meant to differentiate the direction transportation is flowing—from home to school or from school to home on the regular route. Transportation to school requires pickup at the point on the regular route that is nearest or most easily accessible to the child's home, and drop-off occurs at the point on the regular route nearest and most easily accessible to the child's school. Or, if transportation is from school to the child's home, pickup is at the point nearest or most easily accessible to the child's school, and drop-off is the point on the regular route nearest or most easily accessible to the child's home.

¶ 26        Plaintiffs also direct our attention to the inclusion of the verbiage "on the same basis" in section 29-4. See *id.* Plaintiffs contend that providing transportation "on the same basis" means that the District must consider the same factors it considers when it routes the buses for public schoolchildren. The source of this language is section 29-4, but the language appears only in the portion of section 29-4 governing transportation of students living within 1½ miles of their school. Specifically, nonpublic schoolchildren residing within 1½ miles of their school are afforded "transportation *** *on the same basis* as it provides transportation for its own pupils residing within that distance from the school attended." (Emphasis added.) *Id.* Plaintiffs do not reside within 1½ miles of Bowman, and consequently, this portion of section 29-4 does not apply. We cannot ignore the different language the legislature used in these distinct portions of section 29-4. See *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 28 (where the legislature uses differing language, rules of statutory construction require us to assume different meanings or results were intended); see also *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 39.

¶ 27        In closing, we acknowledge section 29-4 was enacted for the "secular legislative purpose of protecting the health and safety of children traveling to and from nonpublic schools." *Bakalis*, 54 Ill. 2d at 461. That does not mean that section 29-4 must be interpreted as requiring a local school district to modify its existing regular bus routes to accommodate nonpublic schoolchildren. The benefits afforded by section 29-4 are "incidental" to nonpublic schools in that section 29-4 only "requires a school board to provide the same transportation along its regular school bus routes for nonpublic school pupils as it provides for its public school pupils." *Id.* at 451, 461. We are mindful that in some communities the regular routes of the public school transportation system might not offer a realistic means of school

transportation. For example, the point on the regular route that is nearest or most easily accessible to the child's school may be a significant distance. In that case, parents of nonpublic schoolchildren are left to find other means of school transportation. Still, whether section 29-4 is "wise or unwise, and whether it is the best means to achieve the desired results, are among the matters for the legislature and not the courts." *People v. Shephard*, 152 Ill. 2d 489, 503 (1992). Just as section 29-4 does not require the public school district to provide transportation to nonpublic schoolchildren on days public schools are not in session (*C.E.*, 2012 IL App (5th) 110390, ¶ 10), section 29-4 does not command a local district to modify its regular bus routes to accommodate transporting nonpublic schoolchildren to and from their place of learning.

¶ 28                                    III. CONCLUSION

¶ 29        We reverse the appellate court's judgment and hold that transportation provided by a local school district to nonpublic schoolchildren living at least 1½ miles from their place of learning under section 29-4 is limited to transportation at points along the District's regular bus routes. Therefore, the circuit court properly granted summary judgment in favor of the District where plaintiffs' sole request was for an order commanding the District to modify its regular bus routes.

¶ 30        Appellate court judgment reversed.

¶ 31        Circuit court judgment affirmed.

¶ 32        JUSTICE CUNNINGHAM, dissenting:

¶ 33        The majority holds that, in enacting section 29-4 of the School Code (105 ILCS 5/29-4 (West 2022)), the legislature intended to provide a bus transportation program for nonpublic schoolchildren that would protect the health and safety of the children " 'traveling to and from nonpublic schools' " (*supra* ¶ 27 (quoting *Board of Education, School District No. 142 v. Bakalis*, 54 Ill. 2d 448, 461 (1973))) but that the legislature did not, in fact, intend to have any of the school buses actually take those children to their schools. Instead, according to the majority, the

legislature intended for the schoolchildren to be taken someplace other than their school—to a point somewhere along a public school bus route that might be miles away from the nonpublic school and that could leave the schoolchildren with no means of safely reaching their own school. The majority's holding is deeply misguided. When interpreting a statute, we do not " 'insult the legislature by attributing absurdities to it.' " *People v. Hanna*, 207 Ill. 2d 486, 500 (2003) (quoting *Krzalic v. Republic Title Co.*, 314 F.3d 875, 880 (7th Cir. 2002)). Yet that is what the majority has done here. The majority has concluded that the legislature enacted an inherently contradictory statute. The majority's reading of section 29-4 means that the statute both requires that nonpublic schoolchildren be transported to and from their schools and that they *not* be transported to and from their schools. That cannot be correct. Section 29-4 plainly requires that nonpublic schoolchildren be transported to and from their schools. The statute cannot reasonably be read to mean both that the schoolchildren are required to be transported to their schools and that they are also *not* required to be transported to their schools.

¶ 34    And there is an additional, more fundamental problem with the majority's construction of section 29-4. "It is well established that in the construction of statutes, the courts start with the assumption that the legislature intended to enact an effective law, and the legislature is not to be presumed to have done a vain thing in the enactment of a statute." *Pliakos v. Illinois Liquor Control Comm'n*, 11 Ill. 2d 456, 459 (1957). Thus, courts have a duty to avoid an interpretation of a statute that would render it " 'insignificant, meaningless, inoperative, or nugatory.' " *Matsuda v. Cook County Employees' & Officers' Annuity & Benefit Fund*, 178 Ill. 2d 360, 366 (1997) (quoting *Pliakos*, 11 Ill. 2d at 460). The majority's construction of section 29-4 ignores that fundamental principle.

¶ 35    No parent is going to put a child—especially an elementary schoolchild—on a bus that does not take the child to the school the child is attending. It would be both pointless and completely irresponsible to do so. As construed by the majority, the bus transportation service required by section 29-4 would never be used. The majority has thus rendered section 29-4 completely inoperative and, indeed, has effectively repealed the statute.

¶ 36    The majority recognizes the implausibility of its construction of section 29-4 but states that it is simply deferring to the legislature on a matter of policy. *Supra*

¶ 27. The majority has it backwards. By effectively repealing section 29-4, the majority is not showing deference to the legislature but is, instead, positing its own policy pronouncement, premised upon a deeply flawed reading of the statute.

¶ 37      The bus transportation program for nonpublic schoolchildren currently codified in section 29-4 was first established in 1933 and has been in continuous existence for 93 years. *Bakalis*, 54 Ill. 2d at 464 (citing 1933 Ill. Laws 1048). According to the Illinois State Board of Education, in the 2024-25 school year, 8,355 nonpublic schoolchildren made use of the program. See Ill. State Bd. of Educ., Illinois Public School Pupil Transportation Statistics by District, Annual Statistical Report, Table 24 (2024-25), https://secrpt.isbe.net/WebReports/WebReports/Index/A361C5B2-FAEC-496C-ACEC-46A2B6D35080 [https://perma.cc/LGC5-Z3LJ]. Whatever the views of the majority on the desirability of providing bus transportation for nonpublic schoolchildren, it cannot be the role of this court to eliminate such a long-standing and widely used program intended to benefit nonpublic schoolchildren in Illinois.

¶ 38      The majority's conclusion that the legislature intended for nonpublic schoolchildren to be transported someplace *other than their own school* finds no support in either the text or history of section 29-4. That provision states, in full:

"Pupils attending a charter school or nonpublic school. The school board of any school district that provides any school bus or conveyance for transporting pupils to and from the public schools shall afford transportation, without cost, for children who attend a charter school or any school other than a public school, who reside at least 1 ½ miles from the school attended, and who reside on or along the highway constituting the regular route of such public school bus or conveyance, such transportation *to extend from some point on the regular route nearest or most easily accessible to their homes to and from the school attended, or to or from a point on such regular route which is nearest or most easily accessible to the school attended by such children*. Nothing herein shall be construed to prevent high school districts from transporting public or nonpublic elementary school pupils on a regular route where deemed appropriate. The elementary district in which such pupils reside shall enter into a contractual agreement with the high school district providing the service, make payments accordingly, and make claims to the State in the amount of such

contractual payments. The person in charge of any charter school or school other than a public school shall certify on a form to be provided by the State Superintendent of Education, the names and addresses of pupils transported and when such pupils were in attendance at the school. If any such children reside within 1 ½ miles from the school attended, the school board shall afford such transportation to such children on the same basis as it provides transportation for its own pupils residing within that distance from the school attended.

Nothing herein shall be construed to preclude a school district from operating separate regular bus routes, subject to the limitations of this Section, for the benefit of children who attend a charter school or any school other than a public school where the operation of such routes is safer, more economical and more efficient than if such school district were precluded from operating separate regular bus routes.

If a school district is required by this Section to afford transportation without cost for any child who is not a resident of the district, the school district providing such transportation is entitled to reimbursement from the school district in which the child resides for the cost of furnishing that transportation, including a reasonable allowance for depreciation on each vehicle so used. The school district where the child resides shall reimburse the district providing the transportation for such costs, by the 10th of each month or on such less frequent schedule as may be agreed to by the 2 school districts." (Emphasis added.) 105 ILCS 5/29-4 (West 2022).

¶ 39        Section 29-4 states that a public school district subject to its terms is required to provide bus transportation to nonpublic schoolchildren and that such transportation must "extend from some point on the regular route nearest or most easily accessible to their homes to and from the school attended, or to or from a point on such regular route which is nearest or most easily accessible to the school attended by such children." *Id.* This language is an express charge to public school districts to provide bus transportation that stops at, or at least near, the nonpublic school the schoolchildren are attending. By its plain terms section 29-4 mandates that nonpublic schoolchildren be transported to their school in the same way that public schoolchildren are transported to theirs.

¶ 40    The majority rejects the idea that section 29-4 requires that the school buses actually stop at or near the nonpublic school. The majority agrees with the defendant school district's construction of section 29-4 regarding the destination to which public school districts are required to transport nonpublic schoolchildren. The majority finds that the "strongest indicator of legislative intent" in defining the scope of the transportation requirement imposed by section 29-4 is the statute's "use of the term 'regular route.' " *Supra* ¶ 21. The majority posits that the use of that term means that a school district has no obligation under section 29-4 to transport nonpublic schoolchildren to, or near, their school. *Supra* ¶¶ 21-24. Instead, according to the majority, the school district's only obligation is to transport the nonpublic schoolchildren to a point somewhere along an unmodified public school bus route that is nearest to the nonpublic school, even if that point is miles away from the nonpublic school and the schoolchildren are left with no means of safely reaching their own school.[1] *Supra* ¶ 25. This analysis is untenable and unpersuasive.

¶ 41    The use of the term "regular route" does not, in some manner, negate or eliminate section 29-4's directive to transport the nonpublic schoolchildren "to and from the school attended." Rather, the use of the term "regular route" simply means that the school district is not required to provide door-to-door transportation for nonpublic schoolchildren. The history of section 29-4 makes this point clear.

¶ 42    The statutory provision that is currently codified at section 29-4 of the School Code was originally enacted in 1933. *Bakalis*, 54 Ill. 2d at 464 (citing 1933 Ill. Laws 1048). In its original form, the statute consisted only of what is now the first sentence of section 29-4, and it included language that gave school districts the option to pick up nonpublic schoolchildren "from their homes." The statute provided, in full:

"In case children who attend any school other than a public school reside on or along the highway constituting the regular route of any public school, bus or conveyance provided by any school district for transporting pupils to and from

---

[1] During oral argument in this case, counsel for the defendant school district acknowledged that schoolchildren attending the Bowman Catholic Elementary School (the nonpublic elementary school at issue in this case) might have to walk "5 to 6 miles" to reach their school.

the public schools, the board of directors or board of education of such district shall afford transportation, without extra charge, for such children *from their homes*, or from some point on the regular route nearest or most easily accessible to their homes to such school, other than a public school, or to the point on such regular route which is nearest or most easily accessible to such school." (Emphasis added.) 1933 Ill. Laws 1048 (§ 1).

¶ 43       The legislature amended the statute in 1972 to remove language reflecting transportation "from the homes of such children." See Pub. Act 77-1719, § 1 (eff. July 1, 1972). At the same time, the legislature also amended section 29-3 of the School Code, the general provision that governs the transportation of public schoolchildren, to provide that the transportation requirement for those children could be met by providing "a pick-up point located not more than one and one-half miles from the home of each pupil assigned to such point." *Id.* Thus, these amendments clarified that a school district does not have a general obligation to pick up either public or nonpublic schoolchildren at their homes but could instead do so from a "pick-up point."

¶ 44       Consequently, under section 29-4, the nonpublic schoolchildren must wait at the same bus stops with the public schoolchildren along the "regular route." However, the fact that the nonpublic schoolchildren are required to wait at a pick-up point along with public schoolchildren does not mean that the school district is relieved of its obligation to transport the nonpublic schoolchildren "to and from the school attended."

¶ 45       The majority also incorrectly rejects the reasoning of the appellate court below. As the appellate court pointed out, in defining the scope of transportation required under the statute, section 29-4 states that "such transportation" is "*to extend* from some point on the regular route nearest or most easily accessible to their homes to and from the school attended, or to or from a point on such regular route which is nearest or most easily accessible to the school attended by such children." (Emphasis added.) 105 ILCS 5/29-4 (West 2022); see *supra* ¶ 20. The appellate court correctly concluded that the definition of the word "extend" for purposes of section 29-4 is " '[t]o cause (something) to be longer, wider, or cover more area.' " 2025 IL App (5th) 230763-U, ¶ 27 (quoting The American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=extend (last

visited Mar. 7, 2025) [https://perma.cc/V7NP-ZU54]). Under that definition, "extend" makes clear that the statute requires transportation to reach beyond the boundaries of the regular bus routes.

¶ 46      The majority's conclusion that "extend" means "to make available" (*supra* ¶ 22) cannot be properly squared with the statutory language. The statute already provides that school districts "shall afford transportation." 105 ILCS 5/29-4 (West 2022). If "extend" means "to make available" as the majority suggests, then the statute effectively repeats itself, deprives the term "extend" of its independent meaning, and renders that term superfluous. Of course, we may not interpret the statute in this way. See *People v. Reed,* 2025 IL 130595, ¶ 25 (when interpreting a statute, courts must give each word, sentence, and clause a reasonable meaning if possible and not render any part of the statute superfluous or meaningless). If the legislature did not intend to require transportation beyond the regular bus routes, it would have omitted the word "extend." By using the word "extend," the legislature expressed its intent to not only require transportation but to require transportation "to extend" beyond the regular bus routes.

¶ 47      Under the majority's interpretation, the statute's transportation requirement is satisfied by merely allowing children to get on or off the bus along the regular route. However, the statute does not state that transportation shall be available at some point on the regular route. It states that transportation shall "*extend from*" a point on the regular route. Given its independent meaning, "extend" establishes that a point on the regular bus route is merely the starting point from which additional transportation must be provided. As such, the statute's transportation requirement is not satisfied by merely allowing children to get on or off the bus along the regular route.

¶ 48      The remaining portions of section 29-4 further underscore the point that the legislature has always intended that the nonpublic schoolchildren be taken to their own school. For example, the second and third sentences of section 29-4 state:

> "Nothing herein shall be construed to prevent high school districts from transporting public or non-public elementary school pupils on a *regular route* where deemed appropriate. The elementary district in which such pupils reside shall enter into a contractual agreement with the high school district providing the service, make payments accordingly, and make claims to the State in the

amount of such contractual payments." (Emphasis added.) 105 ILCS 5/29-4 (West 2022).

¶ 49    No reasonable reader of that language would conclude that the use of the term "regular route" means that the legislature intended for high school districts to transport elementary schoolchildren to a high school or to some other point miles away from their elementary school. Rather, the use of the term "regular route" simply means that the elementary schoolchildren may be picked up at the bus stops along the regular high school route and then taken to their own elementary school, whether public or nonpublic.

¶ 50    The final sentence of the first paragraph of section 29-4 also supports the idea that the legislature intended for nonpublic schoolchildren to be dropped off at their own school and not at some other point many miles away. That sentence states:

"If any [nonpublic schoolchildren] reside within 1½ miles from the school attended, the school board shall afford such transportation to such children on the *same basis* as it provides transportation for its own pupils residing within that distance from the school attended." (Emphasis added.) *Id.*

¶ 51    Under the School Code, a public school district has discretion to provide bus transportation for public schoolchildren who live within 1½ miles of the school attended. See *id.* § 29-2. When it does so, section 29-4 mandates that bus transportation be provided on the "same basis" to nonpublic schoolchildren. That is, the nonpublic schoolchildren must be taken to and from their school, just as the public schoolchildren are.

¶ 52    The majority states that the final sentence of the first paragraph of section 29-4 has no relevance to this case because the plaintiff schoolchildren live more than 1½ miles from the Bowman school. *Supra* ¶ 26. But consider for a moment what that means. According to the majority, the legislature intended that nonpublic schoolchildren who live nearest to their own school be transported directly to that school but that nonpublic schoolchildren who live more than 1½ miles away be transported somewhere else. There is no rational basis for concluding the legislature intended such a result. Instead, the more logical and natural conclusion is that the legislature intended that *all* schoolchildren, whether public or nonpublic, be

provided bus transportation on the "same basis" and that all schoolchildren be transported to their own schools.

¶ 53　　And there is additional textual support for the idea that nonpublic schoolchildren must be dropped off at or near their own school. The second paragraph of section 29-4 states:

"Nothing herein shall be construed to preclude a school district from operating separate regular bus routes, subject to the limitations of this Section, for the benefit of children who attend a charter school or any school other than a public school where the operation of such routes is safer, more economical and more efficient than if such school district were precluded from operating separate regular bus routes." 105 ILCS 5/29-4 (West 2022).

¶ 54　　Obviously, it would never be "more economical and more efficient" to operate a separate bus route that takes nonpublic schoolchildren to their own, nonpublic school if section 29-4 did not already impose a general requirement to transport such children to their own schools by using "regular routes." This paragraph of section 29-4 necessarily rests on the premise that the school districts have an obligation to transport the nonpublic schoolchildren to their own school. And the legislative history of this provision confirms that point.

¶ 55　　The second paragraph of section 29-4 was added by Public Act 80-1475, § 1 (eff. Jan. 1, 1979). Speaking in support of the bill that became the act, state Senator Schaffer explained the need for the provision:

"Mr. President, I. . .I'm not familiar with the situation in School District 214, but the schools from my area that have talked to me about this simply want to be able to bring the, in most case parochial kids, into the public school and then when they get a bus load of them ship them over to the. . .the parochial school rather than having to route every public school bus to both schools. This is obviously more efficient, saves money and it is intelligent. They are currently prohibited from doing that. Many of these bus runs only pick up one or two nonpublic students and it's ridiculous to then have the other forty kids bused all the way to the parochial school to drop off those one or two kids when time wise and fiscally it would be smarter just to put them all on one bus and send them over. The bill makes sense and I think the opposition is more of a

philosophical nature to the entire concept than to this particular proposal." 80th Ill. Gen. Assem., Senate Proceedings, June 20, 1978, at 60-61 (statements of Senator Schaffer).

¶ 56 Senator Schaffer's comments make clear that there was a need to allow school districts the option of providing separate bus routes for nonpublic school students because using only the "regular routes" was not always the most efficient or economical way to get those students to the nonpublic school. His comments also make clear that the legislature has always understood that section 29-4 imposes an obligation to take nonpublic schoolchildren to their own school.

¶ 57 And section 29-4 is not the only statutory provision that indicates the legislature has always intended for nonpublic schoolchildren to be transported to their own school and not someplace else. For example, section 29-5.2 of the School Code states that parents and custodians of schoolchildren who do not "have access to transportation provided entirely at public expense to and from" the school in which their children are enrolled (105 ILCS 5/29-5.2(b)(1)(D) (West 2022)) are entitled to reimbursement from the State for transportation expenses paid during the school year.[2] See *id.* § 29-5.2. This applies to both public *and* nonpublic schools. *Id.* § 29-5.2(b)(3).

¶ 58 In other words, in school districts where bus transportation is unavailable, both public and nonpublic schoolchildren are treated equally—both are entitled to the same reimbursement for transportation expenses. Yet, according to the majority, in school districts where bus transportation *is* available, section 29-4 requires that the public and nonpublic schoolchildren be treated *unequally*—the public schoolchildren receive free bus transportation that takes the children directly to their school, while the nonpublic schoolchildren do not. It is inconceivable that the

---

[2]School districts that provide bus transportation are also entitled to reimbursement from the State, including for the transportation of "children who attend any school other than a public school." 105 ILCS 5/29-5 (West 2022). Notably, the defendant school district in this case does not contend that transporting the plaintiff schoolchildren to their own school would result in any financial hardship to the defendant, and it is not clear why the defendant ceased providing that transportation. The only relevant information in the record on this point is a statement from an employee of the defendant indicating that he thought the transportation might have been halted due to a lack of available bus drivers. The employee acknowledged, however, that this was "purely conjecture" on his part.

legislature intended this disparity in treatment. The more reasonable conclusion is that the legislature intended that all schoolchildren be treated equally and that, under section 29-4, both public and nonpublic schoolchildren are required to be transported to their own schools.

¶ 59        Or consider section 29-3 of the School Code (*id.* § 29-3). That provision sets out the general obligation to provide bus transportation for public schoolchildren who live more than 1½ miles from the school attended and also states how the 1½ miles' distance is to be measured for all schoolchildren, both public *and* nonpublic. Section 29-3 states:

> "For the purpose of [the School Code] 1 ½ miles distance shall be from the exit of the property where the pupil resides to the point where pupils are normally unloaded *at the school attended*; such distance shall be measured by determining the shortest distance on normally traveled roads or streets." (Emphasis added.) *Id.*

This provision makes clear that, to determine eligibility for bus transportation for nonpublic schoolchildren under section 29-4, the 1½ miles' distance requirement is measured between the children's homes and the nonpublic school attended. Yet, according to the majority, at the same time, the legislature intended that the nonpublic schoolchildren be transported someplace *other* than the school they are attending. Once again, this makes no sense. The more reasonable reading of these provisions is that the legislature imposed a 1½ miles' distance requirement to "the school attended" because that is where the schoolchildren are required to be taken.

¶ 60        When interpreting a statute, "we must read the statute as a whole, considering the relevant provisions in their context and within the broader framework of the act of which they are a part." *Bayer v. Panduit Corp.*, 2016 IL 119553, ¶ 18. Considering the statutory bus transportation scheme as a whole leads to only one conclusion: the legislature intended that nonpublic schoolchildren be transported to their own schools, just as the public schoolchildren are transported to their own schools.

¶ 61        This is not a novel conclusion. More than 50 years ago, in *Bakalis*, this court recognized that section 29-4 requires that nonpublic schoolchildren be transported to their own schools. In *Bakalis*, the plaintiff, the Board of Education of School

- 20 -

District No. 142, maintained three elementary schools in the village of Oak Forest and an adjoining unincorporated area. *Bakalis*, 54 Ill. 2d at 452. The school district had been asked to provide bus transportation for children attending two Catholic elementary schools, one in Oak Forest and one in the adjoining suburb of Midlothian, but had refused to do so on the grounds that transporting those children would require the district to hire two additional buses at a substantial annual cost. *Id.* In response to this refusal, the defendants, the Superintendent of Public Instruction (whose duties now reside with the State Board of Education (see 105 ILCS 5/1A-4 (West 2022))) and the County Superintendent of Schools of Cook County, withheld state funds from the school district. *Bakalis*, 54 Ill. 2d at 451. According to the defendants, withholding of the funds was warranted on the grounds that, in refusing to provide transportation for the children, the school district was violating section 29-4. *Id.* at 451-52.

¶ 62        The school district thereafter brought actions for injunctive and declaratory relief against the defendants, arguing that requiring it to transport students to the Catholic elementary schools violated section 3 of article X of the Illinois Constitution of 1970 (Ill. Const. 1970, art. X, § 3). *Bakalis*, 54 Ill. 2d at 453. That provision states:

        "Neither the General Assembly nor any county, city, town, township, school district, or other public corporation, shall ever make any appropriation or pay from any public fund whatever, anything in aid of any church or sectarian purpose, or to help support or sustain any school, academy, seminary, college, university, or other literary or scientific institution, controlled by any church or sectarian denomination whatever; nor shall any grant or donation of land, money, or other personal property ever be made by the State, or any such public corporation, to any church, or for any sectarian purpose." Ill. Const. 1970, art. X, § 3.

¶ 63        This court rejected the school district's argument. This court began its analysis by reviewing both federal and state authorities that had addressed the validity of legislation authorizing the use of public funds to transport nonpublic schoolchildren, including *Everson v. Board of Education of Ewing*, 330 U.S. 1 (1947), in which the United States Supreme Court held that the use of state funds to reimburse parents who paid for public transportation to send their children to

- 21 -

Catholic parochial schools did not violate the federal establishment clause. This court then stated:

> "It appears that while there is unanimity neither among the courts nor their respective judges, the majority view and the trend of judicial opinion is that transportation at public expense of parochial school students on the *same basis* as public school students is considered primarily a health-and-safety measure for the benefit of all students, and that any aid to the parochial school, or the church supporting it, is incidental." (Emphasis added.) *Bakalis*, 54 Ill. 2d at 460.

This court then went on to note that the defendants in that case, citing statistics and highway safety reports, had asserted that "travel by school bus is safer than by automobile or on foot, that children traveling by school bus are protected from inclement weather and from persons who might do them harm," and therefore that "section 29-4 is a health-and-safety measure for the protection of all school children." *Id.* at 460-61. This court agreed with that assertion. This court held:

> "From our examination of the authorities we conclude that section 29-4 was enacted for the secular legislative purpose of protecting the health and safety of children *traveling to and from nonpublic schools*[,] that the primary effect of the statute neither advances nor inhibits religion, that any benefit to the parochial school or church controlling it is incidental and that the statute does not foster an excessive government entanglement with religion." (Emphasis added.) *Id.* at 461.

¶ 64 Thus, *Bakalis* has already answered the question presented in this case. *Bakalis* *expressly* held that the intent of the legislature in enacting section 29-4 was to protect "the health and safety of children *traveling to and from nonpublic schools*." (Emphasis added.) *Id. Bakalis* did not hold that the intent of the legislature in enacting section 29-4 was to protect the health and safety of nonpublic schoolchildren traveling to and from someplace *other than* their own school. *Bakalis* also expressly stated that section 29-4 "requires a school board to provide *the same transportation* along its regular school bus routes for nonpublic school pupils as it provides for its public school pupils" (emphasis added) (*id.* at 451) and stressed the constitutional importance of providing parochial schoolchildren bus transportation "on the same basis" as public schoolchildren (*id.* at 460). In short, *Bakalis* held that section 29-4 does, in fact, impose an obligation upon school

districts to transport nonpublic schoolchildren "to and from the school attended" (105 ILCS 5/29-4 (West 2022)), just as public schoolchildren are transported to their schools. Several years later, this court again confirmed that understanding of *Bakalis*, stating that, in *Bakalis*, this court held that section 29-4 "required school boards to provide free transportation *to school* to nonpublic school students." (Emphasis added.) *In re Marriage of Lappe*, 176 Ill. 2d 414, 432 (1997).

¶ 65 Indeed, the only reason the school district in *Bakalis* brought a constitutional challenge to section 29-4 is because the statute requires schoolchildren to be transported to nonpublic, parochial schools and, in so doing, provides a benefit to those schools. In other words, section 29-4's requirement that nonpublic schoolchildren be transported to their own schools was the underlying premise of the entire *Bakalis* opinion. If section 29-4 did *not* contain such a requirement and instead only required that the nonpublic schoolchildren be taken to some other, distant point, there could have been no possible claim under section 3 of article X of the 1970 Illinois Constitution because, simply put, transporting a child to a location miles away from his or her school does not provide "aid" or "support" to a religious school "controlled by any church or sectarian denomination."

¶ 66 The majority touches only briefly on *Bakalis*. The majority acknowledges that *Bakalis* held that the legislature enacted section 29-4 with the intent to protect the health and safety of schoolchildren " 'traveling to and from nonpublic schools' " but then states that section 29-4 does not require a school district to transport schoolchildren to and from nonpublic schools. *Supra* ¶ 27 (quoting *Bakalis*, 54 Ill. 2d at 461). These are clearly contradictory statements. They serve only to illustrate the implausibility of the majority's construction of section 29-4.

¶ 67 The majority also states that the reason this court in *Bakalis* held that the bus transportation program created by section 29-4 provided only an "incidental" benefit to religion, and was therefore constitutional, was because section 29-4 does not require that parochial schoolchildren actually be transported to their own school. *Supra* ¶ 27. That conclusion simply does not withstand scrutiny. The majority does not explain how dropping off parochial schoolchildren at a location miles away from their school is an "incidental" benefit to a religiously affiliated school. Clearly, it is no benefit at all.

¶ 68    "In interpreting a statute, our primary goal is to ascertain and give effect to the intent of the legislature." *Rainey v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 2025 IL 131305, ¶ 12. More than 50 years ago, *Bakalis* held that the intent of the legislature in enacting section 29-4 was to protect the health and safety of children "traveling to and from nonpublic schools." *Bakalis*, 54 Ill. 2d at 461. In the more than five decades that have passed since that time, section 29-4 has been amended on several occasions. It is noteworthy that the legislature has not questioned this court's holding in *Bakalis*, notwithstanding many opportunities to do so. Thus, the legislature has clearly acquiesced to this court's ruling in *Bakalis*. The majority now contradicts and, indeed, overrules *Bakalis* and, in so doing, also directly contravenes the legislative intent in enacting section 29-4.

¶ 69    The majority also departs from *Bakalis* in another, equally important way. The United States Supreme Court has made clear that, when a government denies religious organizations or individuals public welfare benefits because of their faith, that action may violate the free exercise clause of the first amendment. See, *e.g.*, *Carson v. Makin*, 596 U.S. 767 (2022) (holding that the state of Maine could not exclude sectarian schools from a state program that paid tuition for students to attend private schools). *Bakalis* similarly recognized the principle that the government must be " 'neutral in its relations with groups of religious believers and non-believers' " (*Bakalis*, 54 Ill. 2d at 456 (quoting *Everson*, 330 U.S. at 18)) and was careful to say that section 29-4 survives constitutional scrutiny *because* it provides bus transportation to "parochial school students on the *same basis* as public school students" (emphasis added) (*id.* at 460). The majority has now altered that balance.

¶ 70    According to the majority, under section 29-4, a parent who chooses to send a child to a public school receives the public welfare benefit of free bus transportation that takes the child directly to his or her school. On the other hand, a parent who, for religious reasons, chooses to send a child to a parochial school does not receive the same benefit. The majority construes section 29-4 in a way that departs from *Bakalis* and raises a serious question as to the statute's constitutionality, and that invites litigation challenging this new construction of the statute. Of course, where possible, "a statute *** will be interpreted so as to avoid an unconstitutional

construction." *People v. Orth*, 124 Ill. 2d 326, 334 (1988). For this reason, as well, the majority's construction of section 29-4 should be rejected.

¶ 71 The bus transportation program for nonpublic schoolchildren provided by section 29-4 has been in existence for almost 100 years. More than 50 years ago, this court recognized that "the bussing of nonpublic students at public expense was a well-recognized and long-established practice." *Bakalis*, 54 Ill. 2d at 465. The majority now effectively eliminates this long-standing program and tells thousands of schoolchildren that they no longer have a safe and reliable means of getting to school. The majority's construction of section 29-4 is both misguided and unfortunate. I thus urge the legislature to revisit section 29-4 to correct the majority's error.

¶ 72 Accordingly, for the foregoing reasons, I respectfully dissent.

¶ 73 JUSTICES OVERSTREET and ROCHFORD join in this dissent.